**Ida REISNER, a/k/a Ida J. Augello, David Reisner and Eric Reisner, Plaintiffs,**

v.

**A. STOLLER, Spring Valley Justice Court, County of Rockland, J. Meara Deputy Sheriff, Kenneth Moran, Michael Augello, William E. Sherwood, County Clerk of Rockland County, J. Grasselino, Law Clerk, Village Attorney of Spring Valley, Michael Augello, Jr., "John" Pelzer, William D. Friedmann, Charles Brieant, Barbara Jones, Adlai Hardin, Jeffrey Sapir, Heritage Savings, Kensher Homes, Inc., Ronald M. Kahn, James M. Feeney, Albany Savings Bank and John Does 1 to 10, defendants.**

No. 98 Civ. 3198(WCC).

United States District Court, S.D. New York.

May 21, 1999.

Ida Reisner, David Reisner and Eric Reisner, Port Chester, New York, for plaintiffs pro se.

Marx & Aceste, LLP, Andrew Stoller, Spring Valley Justice and Village Attorney of Spring Valley, White Plains, New York, for defendants, Paul I. Marx, Sally Ann Zullo, of counsel.

Law Offices of Kenneth Moran, Kenneth Moran, Michael Augello and Michael Augello Jr., Tallman, New York, for defendants, Kenneth Moran, of counsel.

Eliot Spitzer, Attorney General of the State of New York, William E. Sherwood,

J., Grasselino, John Pelzer and William D. Friedmann, New York City, for defendants, Simone A. Pam, Asst. Attorney General, of counsel.

Mary Jo White, United States Attorney for the Southern District of New York, Charles Brieant, Barbara Jones and Adlai Hardin, U.S. Department of Justice, New York City, for defendants, Sarah Thomas, Asst. United States Attorney, of counsel.

Law Offices of Jeffrey L. Sapir, White Plains, New York, for defendant pro se, Jeffrey L. Sapir, of counsel.

Rider, Weiner, Frankel & Calhelha, Heritage Savings and Albany Savings, Newburgh, New York, for defendants, Moacyr Calhelha, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

*Pro se* plaintiffs Ida Reisner, David Reisner and Eric Reisner brought this action under, *inter alia,* 42 U.S.C. § 1983 and 18 U.S.C. § 1962 alleging that the defendants have engaged in a pattern of racketeering activity and conspired to deprive them of title to and possession of their home at 53 Gerow Avenue, Spring Valley, New York (the "Premises"). Plaintiffs have named as defendants in this action Michael Augello ("Augello"), the individual who allegedly took title to the Premises by fraudulent means, his son, Michael Augello, Jr., and his attorney, Kenneth Moran ("Moran") (collectively the

1. Mistakenly identified and sued as "A. Stoller, Spring Valley Justice Court, County of Rockland."

2. Mistakenly identified and sued as "Village Attorney of Spring Valley."

3. Mistakenly identified and sued as "J. Grassalino."

4. ·Mistakenly identified and sued as " 'John' Pelzer."

5. The above list of defendants, although lengthy, is not exhaustive. Also named are "J. Meara Deputy Sheriff" of Rockland Coun-

"Augello defendants"); Albany Savings Bank, now known as Albank, FSB, and its predecessor in interest Heritage Savings Bank (collectively "Albank"), the institution that issued a mortgage loan to Augello in connection with his alleged purchase of the Premises; Andrew Stoller,[1] the Village of Spring Valley Justice who issued the warrant evicting plaintiffs from the Premises, and the Village Attorney of the Village of Spring Valley[2] (collectively the "village defendants"); William E. Sherwood, Justice of the Supreme Court of the State of New York, Rockland County, Gregory C. Grasselena, law clerk to Justice Sherwood,[3] James Pelzer, Supervisor of the Decision Department of the Appellate Division, Supreme Court of the State of New York, Second Judicial Department,[4] and William D. Friedmann, Associate Justice of the Appellate Division, Supreme Court of the State of New York, Second Judicial Department (collectively the "state defendants"); Jeffrey L. Sapir ("Sapir"), the Standing Chapter 13 Trustee for the Southern District of New York, who was the duly appointed Trustee for Ida Reisner in connection with her Chapter 13 bankruptcy filing; and finally, Charles L. Brieant, United States District Judge, Barbara S. Jones, United States District Judge, and Adlai S. Hardin, United States Bankruptcy Judge (collectively the "federal judicial defendants").[5]

This matter is now before the Court on a variety of motions. The Augello defendants have moved pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for

ty who presumably executed the warrant of eviction, "County Clerk of Rockland County" who filed the allegedly fraudulent deed and mortgage, "Kensher Homes, Inc.," the entity which sold the Premises to Mr. Augello, "Ronald M. Kahn" and "James M. Feeney", attorneys for Kensher Homes in connection with the sale, and several unknown persons referred to as "John Does 1 to 10." The John Does have never been identified, and the remaining defendants have yet to appear in this action.

judgment on the pleadings on the grounds that the court lacks subject matter jurisdiction and the action (i) is barred by the doctrine of res judicata, (ii) fails to state a claim upon which relief may be granted, (iii) is barred by the statute of limitations, and (iv) is barred by the statute of frauds.[6] The Augello defendants further request that the Court issue an order canceling the notice of pendency.

Albank has moved for an order dismissing the complaint (i) pursuant to Fed. R.Civ.P. 12(b)(1), on the ground that the Court lacks subject matter jurisdiction, and (ii) pursuant to Fed.R.Civ.P. 12(b)(6), on the grounds that the complaint fails to state a claim upon which relief may be granted and the action is barred by the applicable statute of limitations.

The village defendants have moved for (i) an order dismissing the complaint pursuant to Fed.R.Civ.P. 12(c), on the grounds that the Court lacks subject matter jurisdiction and the complaint fails to state a claim upon which relief may be granted; and/or (ii) for an order pursuant to Fed. R.Civ.P. 56(b), granting the village defendants summary judgment on the basis of judicial immunity and quasi-judicial immunity.[7]

The state defendants have moved for an order dismissing the complaint pursuant to Fed.R.Civ.P. 12(b)(6), on the grounds that (i) the complaint fails to state a claim upon which relief may be granted, and (ii) judicial immunity, abstention and comity require its dismissal.

Sapir has moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c),[8] on the grounds that (i) the complaint fails to state a claim upon which relief may be granted, (ii) Sapir as Bankruptcy Trustee is entitled to quasi-judicial immunity, and (iii) plaintiffs failed to seek permission to name the Chapter 13 Trustee as a defendant.

Lastly, the federal judicial defendants have moved for an order dismissing the complaint (i) pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, and (ii) pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted and the doctrine of absolute immunity.

For the reasons stated below, the motions of Albank, the village defendants, the state defendants, Sapir and the federal judicial defendants are granted. The Augello defendants' motion to dismiss is granted only insofar as it seeks: (1) dismissal of all claims against Michael Augello, Jr.; (2) dismissal of the RICO claims against Augello and Moran; and (3) dismissal of the abuse of process claim against Moran, subject to repleading by plaintiffs within 30 days of the date of this Order.

## BACKGROUND

Some time prior to 1977, plaintiff Ida Reisner, then widowed, sold her home in Portchester, New York and moved with her two sons, plaintiffs David Reisner and Eric Reisner, to Greenridge Avenue in White Plains, New York. While living in White Plains, Ms. Reisner claims, and Au-

---

6. They also erroneously moved pursuant to Rules 12(b)(1) and 12(b)(6) for an order dismissing the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted, respectively. The Augello defendants filed an Answer to the Complaint dated June 1, 1998, therefore, the pleadings are closed and the motion will be treated as a motion pursuant to Rule 12(c). *See Nat'l Ass'n of Pharmaceutical Mfrs., Inc. v. Ayerst Laboratories*, 850 F.2d 904, 909 n. 2 (2d Cir.1988).

7. The village defendants do not rely on documents outside the pleadings with respect to their immunity defense; therefore, their motion is made solely pursuant to Rule 12(c), not Rule 56(b).

8. Sapir styled his motion as one pursuant to Rules 8(c), 12(b)(1) and 12(b)(6) of the Federal Rules of Bankruptcy Procedure; however, as he has already filed an Answer herein and this is not a bankruptcy proceeding, the proper Federal Rule of Civil Procedure applicable to Sapir's motion is Rule 12(c).

gello does not dispute, that she and Augello were involved in an intimate relationship. Although Augello had allegedly informed Ms. Reisner that he was divorced, at all relevant times, Augello was living with his wife Rosario at their residence in Monsey, New York.

Exactly what transpired next is unclear at this stage of the litigation. Ms. Reisner alleges that she wanted to purchase a home in Spring Valley, New York (defined above as the "Premises") using the proceeds from the sale of her prior home as a downpayment, but was told by either Augello or Albank that she would need a male cosigner on the mortgage because she was a widow. It is clear that Kensher Homes, Inc., the seller of the property, initially believed that Ms. Reisner and Augello were going to purchase the property as man and wife because the letter confirming the time and place of the closing was sent to "Mr. and Mrs. Michael Augello" at Ms. Reisner's address on Greenridge Avenue, White Plains.

Ms. Reisner and Augello attended the closing on July 26, 1977. Ms. Reisner claims that Augello would not allow her to obtain legal counsel or to have an attorney present on her behalf at the closing. Ms. Reisner presented herself as Ida J. Augello and pretended to be Augello's wife. It appears that the deed was originally drafted to convey the Premises to "MICHAEL AUGELLO and IDA AUGELLO, his wife, both residing at 212 Greenridge Avenue, White Plains, New York" but the portion reading "and IDA AUGELLO, his wife, both" has been crossed-out. Ms. Reisner alleges that her name was deleted outside her presence and without her knowledge. Augello claims that she was aware that all documents executed at the closing were executed solely in his name.

It is undisputed that Ms. Reisner paid approximately $10,000 as a downpayment on the Premises; however, Augello claims that Ms. Reisner had loaned him that mon-

ey. Augello executed a mortgage on the Premises for the remainder of the purchase price ($47,440.00) in his name only. Both the deed and mortgage were filed in the Rockland County Clerk's Office on July 28, 1977.

Ms. Reisner and her sons moved into the Premises in August of 1977. For approximately the next twenty years, Ms. Reisner made all mortgage payments to Augello in cash for which no receipts were given. Augello then forwarded such payments to Albank, presumably in the form of a personal check drawn on his own bank account. Ms. Reisner claims that she also paid for all utilities, expenses and maintenance of the Premises. Here, again the parties dispute the nature of the arrangement. Ms. Reisner believed that she was the owner of the Premises. Augello claims that he had an oral agreement with Ms. Reisner that she and her sons could live on the Premises, which was owned by him alone, for as long as they continued to make all mortgage, tax and expense payments.

In or about June of 1992, Ms. Reisner learned for the first time that her name had been removed from the deed. She claims that she confronted Augello and demanded a receipt for all cash payments made to him but that he refused to provide her with receipts. There is no indication of what explanation Augello offered with respect to the removal of her name from the deed, or what assurances he may have given with respect to her ownership or possessory interests in the Premises; however, it appears that Ms. Reisner continued to make some payments until Augello instituted an eviction proceeding in 1996.

On September 16, 1996, Augello commenced a summary proceeding in the Justice Court of the Village of Spring Valley, New York, by service of a Notice of Petition and Petition, Index No. 573/96, seeking (i) a judgment against Ms. Reisner for unpaid rent in the amount of $52,465.00 [9]

9. In support of his Notice of Petition and Petition, Augello attached a Notice of Default

with interest thereon from January 1, 1988, (ii) a judgment awarding him possession of the Premises, and (iii) issuance of a warrant of eviction to remove Ms. Reisner and her sons from the Premises. Moran was retained by Augello in 1996 to institute the eviction proceeding.

On October 3, 1996, Ms. Reisner commenced an action in the Supreme Court of the State of New York, County of Rockland, seeking to remove the Justice Court proceeding to the Supreme Court and asking the Supreme Court to set aside or reform the deed so that it reflect Ms. Reisner as the owner of the Premises.[10] Augello moved to dismiss the action arguing that it was an action for common law fraud in connection with the execution of the deed and was therefore time-barred. The Supreme Court agreed and, on January 13, 1997, Justice Sherwood issued an Order granting Augello's motion to dismiss pursuant to N.Y.C.P.L.R. § 3211(a)(5) (the "1997 Sherwood Order"). The Order cited the New York statutes of limitations for common law fraud, N.Y.C.P.L.R. §§ 213(8) and 203(g), which require the action to be brought within six years of the fraudulent act or two years from discovery, whichever is longer. Given that the alleged forgery occurred in 1977, and that Ms. Reisner admitted to having learned of the forgery in June of 1992, Justice Sherwood dismissed the action.[11]

The Spring Valley Justice Court then scheduled a March 11, 1997 trial date for the summary proceeding. The day before trial was to commence, Ms. Reisner attempted to remove the proceeding to the

United States District Court for the Southern District of New York. By order dated June 18, 1997, Judge Barbara S. Jones remanded the proceeding to the Justice Court finding that the petition for removal was untimely under 28 U.S.C. § 1446, and the court otherwise lacked subject matter jurisdiction over the action.

On August 18, 1997, a trial was held in the eviction proceeding in Justice Court and judgment was rendered in favor of Augello. Prior to the issuance of a written decision, however, Ms. Reisner filed a Petition under Chapter 13 of the U.S. Bankruptcy Code in the United States Bankruptcy Court, Southern District of New York, *In re Ida Reisner*, Index No. 97 B 22163. Shortly thereafter, Ms. Reisner initiated an adversary proceeding against Augello asserting the same allegations regarding the fraudulent execution of the deed, and alleging a conspiracy among Augello and the New York State courts to deprive her of title to the Premises. On December 3, 1997, the Bankruptcy Petition was dismissed by Judge Hardin for failure to comply with a pre-confirmation order, and the adversary proceeding was thereby rendered moot. Judge Brieant subsequently upheld the dismissal on appeal.

The bankruptcy stay having been lifted, on January 6, 1998 the Justice Court issued a Judgment in favor of Augello and Warrant of Eviction, terminating any possessory interest in the Premises that Ms. Reisner and her sons may have had (the "1998 Judgment and Warrant of Eviction").[12]

---

and Demand for Rent that calculated the amount of past due rent as follows: 1987—$1,385; 1988—$4,200; 1989—$4,200; 1990—$5,310; 1991—$5,400; 1992—$5,400; 1993—$5,520; 1994—$6,540; 1995—$10,185; 1996—$4,325.

10. The action was captioned *Ida Reisner v. Michael Augello,* and although some pleadings and orders bear the Index No. 6127/96, all records in this action are maintained by the County Clerk under the Index No. 6807/96.

11. Ms. Reisner filed a Notice of Appeal from this decision on February 4, 1997. It is unclear from the record whether she failed to perfect her appeal or whether the decision was affirmed on the merits.

12. The Judgment only awarded possession of the Premises to Augello together with costs of $149.00. The court did not award Augello the $52,465.00 he was seeking in purported back "rent."

Ms. Reisner then brought an Article 78 proceeding in the Supreme Court of the State of New York, County of Rockland, seeking a review of the adverse determination of the Justice Court in the summary proceeding. *Reisner v. Stoller,* Index No. 1595/98. On April 16, 1998, Justice Sherwood dismissed the Article 78 proceeding on the grounds that the court lacked personal jurisdiction over the defendants and lacked subject matter jurisdiction because, under the Uniform Justice Court Act, it did not have appellate jurisdiction over the Justice Court of the Village of Spring Valley.

In a final, desperate lunge for relief, Ms. Reisner instituted the within action on May 6, 1998 alleging, *inter alia,* a conspiracy among all named defendants to deprive her of title to her property, due process and equal protection of the law. As the defendants' proposed grounds for dismissal of the complaint vary, we will address each motion separately.

## DISCUSSION

 A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States,* 82 F.3d 23, 26 (2d Cir.1996) (quoting *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). All well-pleaded factual allegations will be accepted as true and all reasonable inferences must be drawn in favor of the plaintiff. *See Wright v. Ernst & Young LLP,* 152 F.3d 169, 173 (2d Cir. 1998), *cert. denied,* — U.S. ——, 119 S.Ct. 870, 142 L.Ed.2d 772 (1999). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2

JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed.1997); *see also Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1088 (2d Cir.1995). However, the pleadings of pro se plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and must be liberally construed. *See Boag v. MacDougall,* 454 U.S. 364, 365, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982).

 In assessing the legal sufficiency of a claim, the Court may consider not only the facts alleged in the complaint, but also any document attached as an exhibit or incorporated by reference. *See* Fed. R.Civ.P. 10(c); *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). Attached to plaintiffs complaint as exhibits are copies of: (1) the deed dated July 26, 1977; (2) a signature page of Augello's mortgage of the Premises dated July 26, 1977; and (3) a letter from Kahn & Feeney, attorneys for Kensher Homes, Inc., addressed to Mr. and Mrs. Michael Augello at Ms. Reisner's address in White Plains, New York and dated July 18, 1977, advising of the date and time for closing of title to the Premises. To the extent that plaintiffs' allegations are contradicted by these exhibits, the exhibits control. *See Sazerac Co. v. Falk,* 861 F.Supp. 253, 257 (S.D.N.Y.1994). The court may also take judicial notice of matters of public record, such as pleadings and court orders from prior litigation between the parties. *See Hirsch,* 72 F.3d at 1092; *Day v. Moscow,* 955 F.2d 807, 811 (2d Cir.1992) (court can consider previously dismissed complaint upon which defense of res judicata was based in motion pursuant to Fed.R.Civ.P. 12(b)(6)).

The same legal standards apply to motions for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). *See Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994) (court must accept all well-pleaded facts as true, draw all inferences in favor of plaintiff, and should not dismiss unless con-

vinced plaintiff can prove no set of facts which would entitle him to relief); *Gleave v. Graham,* 954 F.Supp. 599, 605 (W.D.N.Y.1997) (court may only consider pleadings, documents attached thereto or referenced therein, and matters of judicial notice). "Pro se complaints are to be construed particularly liberally," and should be "interpreted to raise the strongest arguments they suggest." *Mitchell v. Keane,* 974 F.Supp. 332, 338 (S.D.N.Y. 1997), *aff'd,* No. 98–2368, 1999 WL 159896 (2d Cir. March 17, 1999) (internal quotation and citations omitted). Further, in the event the court finds that the complaint fails to state a claim upon which relief may be granted, the court may permit the plaintiff to amend the pleading if the requirements of Fed.R.Civ.P. 15(a) are met. *See* 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.38 (3d ed.1997); *Moviecolor Ltd. v. Eastman Kodak Co.,* 288 F.2d 80 (2d Cir.1961).

## I. *Albank's Motion to Dismiss*

The complaint contains the following allegations against Albank:

[D]efendant Heritage Savings bank required a 'male co-signer' because of its gender discrimination policy. [Therefore,] in response to defendant Heritage's requirement for a 'male co-signer,' [Ms. Reisner and Augello] took title by deed ... in both [of their] names on July 28, 1977. (Compl.¶ 2).

The defendant Heritage Savings Bank ostensibly gave a mortgage to the said Michael Augello rather than Ida Reisner aka [sic] Ida J. Augello as agreed on the said premises having discriminated against plaintiff and illegally and deceptively required a 'male co-signer' because plaintiff was a widow. This was the result of a fraudulent and criminal conspiracy by defendants Augello and Heritage. Augello, Heritage and other defendants forged the conveyance by at-temptin[g] to strike out the name of Ida J. Augello aka [sic] of Ida Reisner. (Compl.¶ 3).

Heritage Savings Bank and Michael Augello ... acting in concert, colluded, conspired, connived and plotted to forge the conveyance of the premises above referenced to attempt to strike the name of plaintiff from the said conveyance and to receive purported 'mortgage' installments from the plaintiff without informing plaintiff of the forged deed... in support of illegal 'gender' discrimination policies of the civil rights laws and the banking law, all to the plaintiff's damage. (Compl.¶ 20).

From the long list of statutes pursuant to which plaintiffs allege that this Court has jurisdiction, those seemingly applicable to plaintiffs' claims against Albank are 42 U.S.C. § 2000e, 42 U.S.C. § 1983, 18 U.S.C. § 1961, and 15 U.S.C. § 1601. (Compl.¶ 1).[13]

First, Ms. Reisner alleges that Albank discriminated against her on the basis of her gender by requiring widows to have a "male co-signer" when applying for a mortgage loan. These allegations fail to support a claim under 42 U.S.C. § 2000e because the purported gender-discrimination did not arise in the employment context. A civil rights claim under 42 U.S.C. § 1983 is also not stated here because Albank (known as Heritage Savings Bank at the time) was not a state agency. Further, Ms. Reisner cannot establish a claim for violation of the Truth–in–Lending Act under 15 U.S.C. § 1601 which applies only to false statements or omissions with respect to loans, interest rates and related matters. It is undisputed that Ms. Reisner never personally applied for a mortgage loan from Albank. She admits that Augello alone applied for and executed a mortgage in connection with the purchase of the Premises. Therefore, Ms. Reisner never entered into a legal relationship with

---

**13.** There are no allegations against Albank that would seem to implicate 42 U.S.C. § 1971 (Voting Rights Act) or 42 U.S.C. § 12101 (Americans with Disabilities Act) despite their inclusion in paragraph one of the complaint.

Albank which would have given rise to a duty under the Truth–in–Lending Act.

■ Second, plaintiffs allege that Albank issued the mortgage loan to Augello, rather than Ms. Reisner, in furtherance of a conspiracy to fraudulently convey the Premises to Augello. · In order to state a claim under the Racketeer Influenced and Corrupt Organizations Act, Pub.L. No. 91–452 Tit. IX, 84 Stat. 941 (codified as ·amended at 18 U.S.C. §§ 1961 et seq.) ("RICO"), plaintiffs at a minimum must plead facts demonstrating the existence of a criminal enterprise affecting commerce and a pattern of racketeering activity consisting of two or more related predicate acts (within a ten year period) in which defendant participated. *See, e.g., H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Moss v. Morgan Stanley, Inc.* 719 F.2d 5, 17 (2d Cir.1983); *Gagliardi v. Ward,* 967 F.Supp. 67, 68–9 (N.D.N.Y. 1997). Here, plaintiffs' statements regarding Albank's involvement in the alleged conspiracy are mere legal conclusions. The only predicate act alleged on the part of Albank is the issuance of the mortgage loan to Augello in 1977. Not only is this predicate act legally insufficient to state a claim for a violation of 18 U.S.C. §.1961, but it proves that any available claim under this act is time-barred. *See Agency Holding Corp. v. Malley–Duff & Assoc., Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (RICO claims subject to four-year statute of limitations); *Simpson v. Putnam County Nat'l Bank of Carmel,* 20 F.Supp.2d 630, 634 (S.D.N.Y. 1998).[14]

Accordingly, the complaint fails to state a claim against Albank upon which relief may be granted, and any such claim would otherwise be barred by the applicable statute of limitations.　:

## II. *Village Defendants' Motion for Judgment on the Pleadings*

Plaintiffs allege that Justice Stoller: (1) "was without jurisdiction ,to act" in the summary proceeding in the Justice Court of the Village of Spring Valley; (2) failed to comply with N.Y. R.P.L. § 431 "by not enforcing prosecution of a felony for the forged deed;" (3) failed to comply with N.Y. R.P.A.P.L. § 711 in that Augello was not a landlord within the meaning of such act; and (4) was a "disloyal, Satanic racketeer" acting in collusion with Augello by presiding over a summary proceeding which was commenced in furtherance of Augello's fraudulent scheme "to steal plaintiff's home." (Compl.¶ 13). Plaintiffs seek compensatory damages in the amount of $200,000 and punitive damages in the amount of $100,000,000.

■ It is axiomatic that judges are absolutely immune from liability in civil suits seeking monetary damages for acts committed in the performance of their judicial duties. *See Mireles v. Waco,* 502 U.S. 9, 11–13, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). There are only two exceptions to the immunity doctrine; a judge is not immune from liability for: (1) non-judicial actions (*i.e.,* actions not taken in a judicial capacity), or (2) actions, although judicial in nature, which are taken in the complete absence of all jurisdiction. *See id.,* 502 U.S. at 11, 112 S.Ct. 286.

■ The only proceeding before Justice Stoller. was commenced by Augello pursuant to Article 7 of the New York Real · Property Actions and Proceedings Law. Jurisdiction of said summary proceeding was conferred upon the Justice Court by § 204 of the Uniform Justice Court Act.[15] The rendering of a decision

---

**14.** Similarly, assuming *arguendo* that plaintiffs had stated a civil rights claim under 42 U.S.C. § 1983, such claim would be time-barred, *see Owens v. Okure,* 488 U.S. 235, 251, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989) (three-year statute of limitations), as would a claim under 15 U.S.C. § 1601 which must be filed "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).

**15.** Section 204 provides: "The court shall have jurisdiction of summary proceedings to

and issuance of a warrant of eviction in such proceeding were judicial acts to which absolute immunity attached, regardless of whether such actions were in error. *See Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990) ("Liability will not attach where a judge violated state law by an incorrect decision"). We find that plaintiffs' allegations concern actions taken by Justice Stoller in connection with the performance of his judicial function in a court of competent jurisdiction. Thus, plaintiffs' claims for monetary damages are barred by the doctrine of absolute immunity. *See Sassower v. Abrams,* 833 F.Supp. 253, 263 (S.D.N.Y.1993); *see also Amaker v. Coombe,* No. 96 Civ. 1622(JGK), 1998 WL 637177, *3–5 (S.D.N.Y. Sept.16, 1998) (applying judicial immunity doctrine to Justice of Town Court).

■ Again, plaintiffs make only vague and conclusory allegations of conspiracy. Courts have repeatedly held that complaints consisting of only conclusory, vague and general allegations of conspiracies to deprive one of their constitutional rights under 42 U.S.C. § 1983 must be dismissed. *See Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977) (per curiam); *Sadler v. Brown,* 793 F.Supp. 87, 90 (S.D.N.Y.1992) (notwithstanding liberal construction of *pro se* complaints, plaintiff's § 1983 claims were dismissed for failure to comply with Fed.R.Civ.P. 8(a) because they contained "only the most highly conclusory allegations").

Plaintiffs have therefore failed to allege any conduct by Justice Stoller "that would fall outside the parameters of the doctrine of absolute immunity and form the basis of a cognizable claim." *Abrams,* 833 F.Supp. at 263. Further, the complaint is completely devoid of any reference to, or allegation concerning, the Village Attorney. To the extent he may be included in general allegations of "racketeering" and "conspiracy" pertaining to all defendants, the

complaint fails to state any cognizable claim against him. *See Ostrer,* 567 F.2d at 553; *Sadler,* 793 F.Supp. at 90. Accordingly, the village defendants are entitled to judgment on the pleadings.

### III. *State Defendants' Motion to Dismiss*

Plaintiffs allege that Justice Sherwood and his law clerk, Gregory Grasselena: (1) "dismissed plaintiff's action to retain possession" of the Premises; and (2) enforced "the referenced forged deed by which plaintiff acquired possession and ownership of the said premises;" (3) all in furtherance of an "extra-judicial disloyal Satanic racketeering conspiracy;" and (4) acted without jurisdiction "in collusion [with Augello and others] to steal plaintiff's home." (Compl.¶ 13). Additionally, plaintiffs claim that defendants James Pelzer and Justice Friedmann "in consequence of their disloyal, Satanic racketeering conspiracy thwarted plaintiffs' efforts to obtain due process of law by falsely confusing plaintiff with disloyal instructions and criticism," and that as a result, "plaintiff was illegally evicted from her home on April 13, 1998." (Compl.¶ 22). For such actions by the state defendants, plaintiffs seek compensatory damages in the amount of $200,000 and punitive damages in the amount of $100,000,000.

■ As Justices of the Supreme Court of the State of New York, Justices Sherwood and Friedmann had the authority, and were acting well within their jurisdiction when they ruled upon Ms. Reisner's actions which had been properly brought before them. *See* N.Y.Jud.Law § 147–a (any Justice of the Supreme Court has the power to act upon any business which regularly comes before the term in which he is sitting). Justices Sherwood and Friedmann are, therefore, immune from plaintiffs' claims for money damages because they were performing discretionary func-

recover possession of real property located in whole or in part within the municipality, to remove tenants therefrom, and to render

judgment for rent due without regard to amount."

tions in the exercise of their judicial duties. *See Mireles,* 502 U.S. at 11–13, 112 S.Ct. 286; *Abrams,* 833 F.Supp. at 263.

 The doctrine of judicial immunity has also been extended to "certain others who perform functions closely associated with the judicial process." *Cleavinger v. Saxner,* 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). In determining whether immunity extends to an individual, courts look not to the person's rank or title, but to the nature of their responsibilities or functions. *See id.,* 474 U.S. at 201, 106 S.Ct. 496. Thus, judicial immunity has been extended to law clerks and court clerks when they are assisting judges in the performance of their judicial functions. *See Oliva v. Heller,* 839 F.2d 37, 39 (2d Cir.1988). Such immunity is· absolute if they are performing acts of a discretionary judicial nature, *see id.,* or acts of a ministerial nature performed at the direction of a judge. *See Kane v. Yung Won Han,* 550 F.Supp.·120, 123 (E.D.N.Y.1982).

 Here, Gregory Grasselena accepted plaintiff's order to show cause in connection with the institution of her Article 78 Proceeding in the Supreme Court of the State of New York, and presented it to Justice Sherwood. Defendant James Pelzer, as Supervisor of the Decision Department, merely presented plaintiff's order to show cause to Justice Friedmann and subsequently advised plaintiffs that Justice Friedmann had declined to sign it. Any actions taken by defendants Grasselena and Pelzer were in furtherance of their duties to assist Justices Sherwood and Friedmann, respectively, in the performance of their judicial functions. They are therefore entitled to· absolute immunity from the present claims for monetary damages.

Further, plaintiffs' sweeping allegations that the state defendants deprived them of their constitutional rights fail to state a

valid claim under 42 U.S.C. § 1983 upon which relief may be granted. *See Ostrer,* 567 F.2d at 553; *Sadler,* 793 F.Supp. at 90. Accordingly, plaintiffs' complaint against the state defendants must be dismissed.

## IV. *Federal Judicial Defendants' Motion to Dismiss*

The complaint alleges that ·Judges Brieant, Jones and Hardin violated plaintiffs' civil and constitutional rights by "acting in [an] extra-judicial disloyal, Satanic, and criminal racketeering conspiracy," (Compl.¶ 7) and "have collaborated in many acts according to a pattern of 'racketeering' to steal, extort and deprive [Ms. Reisner] of her ownership" of the Premises. (Compl.¶ 8). Plaintiffs seek compensatory damages in the amount of $200,000 and punitive damages in the amount of $100,000,000. ·

 It is not clear from the complaint whether Judges Brieant, Jones and Hardin are being sued in their official or individual capacities. To the extent that plaintiffs seek monetary damages against them in their official capacities, this Court lacks subject matter jurisdiction over such claims because "the United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)).[16] Consent cannot be implied; rather, plaintiffs must show that the United States by statute has "unequivocally" waived immunity. *Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349; *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996).

 Many of the statutes under which plaintiffs assert jurisdiction are obviously inapplicable to the claims asserted against the federal judges.[17] The ·complaint ap-

16. Although the United States is not named as a defendant, "an action against ... federal officers in their official capacities is essentially a suit against the United States." *Robinson*

*v.· Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994).

17. This is not a bankruptcy proceeding (28 U.S.C. § 1334), nor has the action been re-

parently seeks monetary damages against the defendants for the commission of alleged constitutional torts. However, the Supreme Court has held that neither the general federal question statute, 28 U.S.C. § 1331, nor the Federal Tort Claims Act, waives sovereign immunity with respect to such claims. *See Keene Corp. v. United States,* 700 F.2d 836, 838 n. 3 (2d Cir.1983) (28 U.S.C. § 1331); *Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (Federal Tort Claims Act). Accordingly, to the extent plaintiffs seek monetary damages for constitutional torts allegedly committed by the federal judges, the complaint must be dismissed for lack of subject matter jurisdiction. *See Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349 (unless sovereign immunity is waived, the court lacks jurisdiction over the action).

■ To the extent that plaintiffs are suing the judges for money damages in their individual capacities under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the complaint must be dismissed because Judges Brieant, Jones and Hardin are immune from such suit. *See Mireles,* 502 U.S. at 11–13, 112 S.Ct. 286.[18] They were performing discretionary judicial functions in proceedings over which their respective courts had jurisdiction. Plaintiffs' unsupported accusations and legally conclusory allegations of a judicial conspiracy to deprive plaintiffs of their constitutional rights fail to overcome the defendants' judicial immunity, and otherwise fail to state a claim under which relief may be granted. *Mireles,* 502 U.S. at 11–13, 112 S.Ct. 286; *Abrams,* 833 F.Supp. at 263; *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987) (plaintiff must do more than assert conclusory

allegations that his constitutional rights were violated); *San Filippo v. U.S. Trust Co. of New York,* 737 F.2d 246, 256 (2d Cir.1984) (merely conclusory allegations of a conspiracy among public officials to violate a plaintiff's rights are insufficient); *accord Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990).

Accordingly, the complaint against the federal judicial defendants must be dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.

## V. Sapir's Motion for Judgment on the Pleadings

The sole allegation levied against Sapir states that he, as Ms. Reisner's Trustee in bankruptcy, "acted in a satanic, and criminal conspiracy in violation of law and out of his official capacity in collaboration with other defendants" to "steal, extort and deprive debtor of her ownership of the said premises." (Compl.¶¶ 7, 8).

It is unclear whether Sapir is being sued in his official or individual capacity. To the extent that he is sued in his official capacity as a Chapter 13 Trustee for the U.S. Bankruptcy Court, Southern District of New York, this Court lacks subject matter jurisdiction over the action for the same reasons stated above with respect to the federal judicial defendants. *See Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349; *Robinson,* 21 F.3d at 510; *Keene Corp.,* 700 F.2d at 838 n. 3; *Meyer,* 510 U.S. at 471, 114 S.Ct. 996.

■ To the extent that he is sued in his individual capacity, Sapir is entitled to absolute immunity for his actions. *See Boullion v. McClanahan,* 639 F.2d 213 (5th Cir.1981) (recognizing derived judicial

---

moved from state court (28 U.S.C. § 1442). Defendants Brieant, Jones and Hardin are federal judges and, therefore, were not acting under color of state law for purposes of 28 U.S.C. § 1343 or 42 U.S.C. §§ 1971 and 1983. *See Kingsley v. Bureau of Prisons,* 937 F.2d 26, 30 n. 4 (2d Cir.1991).

**18.** If plaintiffs intended to commence a *Bivens* action against Judges Brieant, Jones and Hardin, the action must also be dismissed for failure to perfect service under Fed.R.Civ.P. 4(e). *See Armstrong v. Sears,* 33 F.3d 182, 186–87 (2d Cir.1994).

immunity for bankruptcy trustees who act under the supervision of and subject to the orders of the bankruptcy court). "[A] trustee will enjoy absolute immunity so long as he does not act in the clear absence of all jurisdiction, or at least acts under the supervision of the bankruptcy judge." *Howard v. Leonard*, 101 B.R. 421, 423 (D.N.J.1989) (citations omitted).

 Here, Sapir filed a motion to dismiss Ms. Reisner's bankruptcy petition before U.S. Bankruptcy Judge Adlai S. Hardin on the ground that Ms. Reisner failed to comply with a pre-confirmation order. Sapir's motion was granted. As a Standing Chapter 13 Trustee, Sapir had a duty to bring such motion. Further, the propriety of filing the motion and its merits were duly considered on oral argument before Bankruptcy Judge Hardin. Thus, Sapir's actions fall within the perimeter of the judicial immunity afforded Trustees in bankruptcy. *See, e.g., id.; Weissman v. Hassett*, 47 B.R. 462, 466 (S.D.N.Y.1985) (Chapter 13 Trustees are absolutely immune from suit for actions taken in furtherance investigation and reporting functions in connection with bankrupt's reorganization).

Even if Sapir were not entitled to absolute immunity for his actions as Trustee, the sweeping allegations of conspiracy set forth in the complaint fail to state a cognizable claim against him. *See Barbera*, 836 F.2d at 99; *San Filippo*, 737 F.2d at 256. Accordingly, Sapir is entitled to judgment on the pleadings.

## VI. *Augello Defendants' Motion for Judgment on the Pleadings*

The complaint is completely devoid of any reference to, or allegation concerning, Michael Augello, Jr. To the extent he may be included in general allegations of "racketeering" and "conspiracy" pertaining to all defendants, the complaint fails to state any cognizable claim against him. *See Ostrer*, 567 F.2d at 553; *Sadler*, 793 F.Supp. at 90.

With respect to Augello and Moran, plaintiffs' complaint asserts the following:

Plaintiffs [sic] wished to purchase the premises 53 Gerow Avenue, Spring Valley, N.Y. 10977 described in the annexed copy of the forged deed, in her usual name of Ida Reisner, however, [she] had agreed with defendant [Augello] to [let him] be co-signer with [her because Augello told her that] defendant Heritage Savings Bank required a 'male co-signer' ... [Heritage's requirement of a male co-signer was] a surprise to me because my interest was in purchasing the house in my name alone. (Compl.¶ 2)

On or about July 26, 1977 in the name of Michael Augello and Ida J. Augello, then being social friends, ... [Augello and I] took title by deed filed in the office of the County Clerk of Rockland County, N.Y. in both names on July 28, 1977 in Liber 994 Page 637 copy annexed hereto. (Compl.¶ 2).

Defendant Augello was at the time ... married to Rosario Augello and owned and resided at 23 South Monsey Road, Monsey, N.Y. 10982. (Compl.¶ 2).

The defendant Heritage Savings Bank ostensibly gave a mortgage to the said Michael Augello rather than Ida Reisner aka [sic] Ida J. Augello as agreed on the said premises.... This was the result of a fraudulent and criminal conspiracy by defendants Augello and Heritage. Defendants Augello and Heritage forged the conveyance by attemptin[g] to strike out the name of Ida J. Augello aka [sic] of Ida Reisner [on the deed]. (Compl.¶ 3).

Upon information and belief, defendant Michael Augello and plaintiff signed a bond or note in evidence of the said mortgage as appears from said mortgage filed in Liber 1142 Page 949. (Compl.¶ 4).

That at some time after delivery of the deed in the joint names of Michael Auge[llo], the name of plaintiff, Ida J. Augello was attempted to be obliterated from the said deed without Plaintiff's

knowledge or consent or any writing made and signed by her as Ida J. Augello or other name authorizing the removal of her name from said deed. (Compl.¶ 5).

Plaintiff Ida J. Augello paid for the said premises out of her own money to the Kensh[er] Homes, Inc. and has paid all payments on the purported mortgage until discovery of the fraudulent forgery to strike plaintiff's name from the deed approximately from June 1992. (Compl.¶ 6).

That upon information and belief, defendants have collaborated in many acts according to a pattern of 'racketeering' to steal, extort and deprive [plaintiff] of her ownership to the said premises. (Compl.¶ 8).

Plaintiff has at all times since July 27th 1977, having ... physically [occupied the Premises] since on or about August 1st 1977 to the 13th day of April 1998, when plaintiff was illegally evicted in consequence of the extra-judicial disloyal plotting of defendants to steal her herein described premises, and has never paid 'rent' to defendant Michael Augello, but that Augello claimed that he had to pay the mortgage in cash pursuant to his sophisticated scheme to steal my home which I paid for with the proceeds of the sale of my former home at 7 Brook Lane, Portchester, N.Y. 10573, [after the sale of which] I temporarily moved to 21–25 Greenridge Avenue, White Plains, N.Y. 10601. (Compl.¶ 11).

Upon information and belief, the defendant County Clerk of Rockland County knowingly colluded with defendants Augello [and] Moran ... to accept a forged document that attempted to strike the plaintiff's name from a conveyance which conveyed the within described premises ... [and] to 'steal and evict plaintiff from her home on April 13th 1998 all to plaintiffs damage in violation of 18 U.S.C. § 1961 et seq. pursuant to a pattern of racketeering and organized crime.' (Compl.¶ 15).

Upon information and belief defendants [Moran and Augello] ... acting in concert, colluded, conspired, connived and plotted to forge the conveyance of the premises above referenced to attempt to strike the name of plaintiff from the said conveyance and to receive purported 'mortgage' installments from the plaintiff without informing plaintiff of the forged deed in violation of RPL 431 a felony subject to enforcement as a crime under the law of the State of New York, but connived with other defendants to evict plaintiff from her home on April 13th 1998. (Compl.¶ 20).

WHEREFORE, plaintiff demands judgment restoring ... her title to the premises herein, and further judgment in the sum of $200,000.00 for damages in addition to punitive damages ... in the sum of $100,000,000.00, individually and jointly, the enforcement of penalties, forfeitures and imprisonment of the defendants, together with such other and further relief as may be just herein. (Compl. Ad Damnum Clause).

A. *Claims Precluded by the 1997 Sherwood Order and the 1998 Judgment and Warrant of Eviction*

 The obvious overlap between issues raised in the instant complaint and those previously litigated in the Supreme Court of the State of New York and the Justice Court of the Village of Spring Valley requires this Court to examine not only the availability of certain claims in light of New York principles of preclusion,[19] but the extent of our jurisdiction under the federal Rooker–Feldman doctrine.

 Under Rooker–Feldman, this Court lacks subject matter jurisdiction

---

19. "State court judgments are to be given the same preclusive effect in federal court as they would be given in the courts of the state

itself." *West v. Ruff,* 961 F.2d 1064, 1065 (2d Cir.1992) (citing *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)).

over an action if the exercise of jurisdiction would result in the reversal or modification of a state court judgment. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) (only the Supreme Court can entertain a direct appeal from a state court judgment); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (federal courts do not have jurisdiction over claims which are "inextricably intertwined" with prior state court determinations); *see also Hachamovitch v. DeBuono*, 159 F.3d 687, 693–94 (2d Cir.1998). The Second Circuit has held that Rooker–Feldman is, at a minimum, co-extensive with common law principles of res judicata (claim preclusion) and collateral estoppel (issue preclusion).[20] Therefore, to the extent that "the precise claims raised in a state court proceeding are raised in the subsequent federal proceeding, Rooker–Feldman will plainly bar the action." *Moccio*, 95 F.3d at 199. However, if "the claims were never presented in the state court proceedings and the plaintiff did not have an opportunity to present the claims in those proceedings, the claims ... are not barred." *Id.*

 Under New York law, a final judgment on the merits must be afforded both res judicata and collateral estoppel effect. The doctrine of res judicata prevents a party from asserting claims that have been, or could have been, litigated in a prior action based upon the same facts. *See Ruff*, 961 F.2d at 1065 (citing *Reilly v. Reid*, 45 N.Y.2d 24, 379 N.E.2d 172, 407 N.Y.S.2d 645 (1978) and *Smith v. Russell Sage College*, 54 N.Y.2d 185, 192–93, 429 N.E.2d 746, 749, 445 N.Y.S.2d 68, 71 (1981)). The doctrine of collateral estoppel prevents a party from relitigating a legal or factual issue identical to one which has been necessarily decided in a prior action

in which the party has had a full and fair opportunity to contest the issue. *See Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 731 (2d Cir.1998); *Long Island Lighting Co. v. Imo Industries Inc.*, 6 F.3d 876, 885 (2d Cir.1993) (citing *Allied Chem. v. Niagara Mohawk Power Corp.*, 72 N.Y.2d 271, 276, 528 N.E.2d 153, 155, 532 N.Y.S.2d 230, 232 (1988)).

Augello and Moran argue that the 1997 Sherwood Order precludes plaintiff from asserting any claims seeking to recover title to the Premises or damages based upon Augello's alleged fraudulent acquisition of title to the Premises. They also claim that the 1998 Judgment and Warrant of Eviction precludes plaintiff from asserting any rights to possession of the Premises. Both arguments are meritorious.

 To the extent that plaintiffs seek title to, or possession of, the Premises, this Court lacks subject matter jurisdiction over such claims because the effect would be to reverse or modify prior state court judgments. Further, when Justice Sherwood dismissed Ms. Reisner's Supreme Court action, albeit on statute of limitations grounds, his decision constituted a final judgment on the merits for the purposes of res judicata and collateral estoppel. *See Bray v. New York Life Ins.*, 851 F.2d 60, 64 (2d Cir.1988); *Russell Sage College*, 54 N.Y.2d at 194, 445 N.Y.S.2d 68, 429 N.E.2d 746. Therefore, any claims which Ms. Reisner could have raised in the Supreme Court of the State of New York with respect to Augello's allegedly fraudulent acquisition of title to the Premises are barred by the doctrine of res judicata. *See Russell Sage College*, 54 N.Y.2d at 192, 445 N.Y.S.2d 68, 429 N.E.2d 746 (New York applies a "transactional approach" barring all claims based on same category

---

**20.** "[T]he Supreme Court's use of 'inextricably intertwined' means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the Rooker–Feldman doctrine if it would be barred under the principles of preclusion." *DeBuono*, 159 F.3d at 695 (quoting *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 199–200 (2d Cir.1996)).

of facts notwithstanding variance of legal theory or requested relief); *O'Brien v. Syracuse,* 54 N.Y.2d 353, 429 N.E.2d 1158, 445 N.Y.S.2d 687 (1981) (prior claim of de facto appropriation barred subsequent trespass action).

For purposes of collateral estoppel, however, the 1997 Sherwood Order only precludes relitigation of the following factual and legal issues: (1) title to the property was taken in the name of Augello in 1977; (2) Ms. Reisner learned that the deed was in Augello's name in 1992; and (3) Ms. Reisner's claim for common-law fraud, filed in October of 1996 was time-barred by N.Y. C.P.L.R. §§ 213(8) and 203(g).[21] The determination that Augello had title to the Premises was binding on the Justice Court of the Village of Spring Valley, which lacked jurisdiction to make an individual determination as to title. Therefore, in light of the Supreme Court's decision, and Ms. Reisner's admission that she had stopped making monthly "rental" payments to Augello, Justice Stoller entered Judgment in favor of Augello, awarding him possession of the Premises, and issued a Warrant of Eviction authorizing the removal of plaintiffs from the Premises. Accordingly, plaintiffs are also precluded from asserting a right to occupy the Premises.

 Plaintiffs may only assert, and this Court only has jurisdiction to consider, claims that could not have been brought in the Justice Court summary proceeding or Supreme Court removal proceeding, including claims that arose subsequent to the initiation of such proceedings. *See Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 97 (2d Cir.1997) (no claim preclusion where second action concerns a transaction occurring after the commencement of prior litigation) (citing *Cohen v. Bd. of Educ. of East Ramapo Cent. Sch. Dist.,* 84 A.D.2d 536, 537, 443 N.Y.S.2d 170 (2d Dep't 1981)).[22] Notwithstanding factual overlap, the determination of a prior proceeding cannot preclude litigation of a cause of action that had not yet accrued, if issues pertaining to the requisite elements had not been necessarily and adversely decided in the prior action. *See Maharaj,* 128 F.3d at 97. "In properly seeking to deny a litigant two 'days in court', courts must be careful not to deprive him of one." *Reilly,* 45 N.Y.2d at 28, 407 N.Y.S.2d 645, 379 N.E.2d 172.

**B. *RICO***

Plaintiffs allege that this Court has subject matter jurisdiction over their claims against Augello and Moran under 18 U.S.C. §§ 1961 et seq. (Compl.¶¶ 1, 15). RICO authorizes a private cause of action for "[a]ny person injured in his business or property by reason of a violation of Section 1962." 18 U.S.C. § 1964(c). To state a claim for damages based upon a violation of Section 1962, plaintiffs must allege the following elements: (1) that the defendants. (2) through the commission of two or more predicate acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invest in or maintain

---

**21.** Contrary to Augello and Moran's assertion, when Justice Sherwood issued the 1997 Order dismissing the Supreme Court action, he did not decide the issues of: (1) whether Augello committed fraud against Ms. Reisner when he took title in his own name, rather than in both of their names; (2) whether Augello committed bank fraud when he signed a mortgage claiming to be the owner of the Premises; or (3) any other allegation of fraud with respect to Augello's dealings with Ms. Reisner. Collateral estoppel only prevents relitigation of issues necessarily decided by the court in order to support the final judgment. *See Transaero,* 162 F.3d at 731;

*Long Island Lighting Co.,* 6 F.3d at 885; *Allied Chem.,* 72 N.Y.2d at 276, 532 N.Y.S.2d 230, 528 N.E.2d 153.

**22.** "If after the first suit is underway, a defendant engages in actionable conduct, plaintiff may—but is not required to—file a supplemental pleading setting forth defendant's subsequent conduct. Plaintiff's failure to supplement the pleadings of his already commenced lawsuit will not result in a res judicata bar when he alleges defendant's later conduct as a cause of action in a second suit." *Maharaj,* 128 F.3d at 97.

some interest in, or participates in (6) an "enterprise"[23] (7) the activities of which affect interstate or foreign commerce. *See Moss v. Morgan Stanley, Inc.* 719 F.2d 5, 17 (2d Cir.1983)..

A "pattern of racketeering activity," may be found if plaintiffs allege "at least two acts of racketeering activity, one of which occurred after [October 15, 1970], and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). In addition, the Supreme Court has held that RICO plaintiffs must show that "racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *Northwestern Bell Telephone Co.,* 492 U.S. at 239, 109 S.Ct. 2893. Racketeering predicate activities include violations of various state and federal criminal statutes, including, *inter alia,* those prohibiting extortion, mail fraud, wire fraud and bank fraud. 18 U.S.C. § 1961(1).

█ Claims for violations of RICO generally need only meet the notice pleading requirements of Fed.R.Civ.P. 8(a); *see McLaughlin v. Anderson,* 962 F.2d 187, 194 (2d Cir.1992) (extortion as predicate act); *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 26 n. 4 (2d Cir.1990) (RICO conspiracy claim);[24] however, any alleged predicate acts involving fraud must be pled with the specificity required by Fed.R.Civ.P. 9(b). *See Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir. 1993). Plaintiffs must specify the allegedly fraudulent statements, identify the speaker, state where and when the state-

ments were made, and explain why the statements were fraudulent. *See id.* Plaintiffs must also plead facts that give rise to a strong inference that the defendant possessed fraudulent intent. *See id.*

It appears that plaintiffs are alleging that Augello and Moran are individuals participating in an association-in-fact enterprise in violation of 18 U.S.C. § 1962(c).[25] The allegations against Augello suggest that he committed the following predicate acts: (1) sent communications by mail or telephone to Ms. Reisner, Kensher Homes, Inc., the law firm of Kahn & Feeney, Ronald M. Kahn, James M. Feeney, the County Clerk of Rockland County and Albank in 1977 in furtherance of a scheme to defraud Ms. Reisner by taking title to the Premises in his own name in violation of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343; (2) obtained a mortgage loan from Albank on July 26, 1977 on the pretense that he was the purchaser of the Premises in violation of the federal bank fraud statute, 18 U.S.C. § 1344; (3) sent communications by mail or telephone to Ms. Reisner and Albank every year from 1977 through and including 1998 in furtherance of his scheme to defraud Ms. Reisner by using her funds to pay down the mortgage in his name, thereby building his own equity in the Premises in violation of the federal mail and wire fraud statutes; (4) made monthly mortgage payments to Albank every year from 1977–1998 which increased his equity in the Premises and line of credit with Albank on the pretense that the funds used were his own funds properly being paid to satisfy Albank's lien on property owned by him in violation of the

---

**23.** An "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

**24.** Under the relaxed federal pleading requirements of Fed.R.Civ.P. 8(a), each element of a claim need not be separately pleaded. Rather, a pleading is sufficient if it gives "the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for

trial." *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988); *see also Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc.,* 10 F.Supp.2d 334, 344 (S.D.N.Y.1998).

**25.** At least that is what the Court has surmised from the allegations as plead. Upon repleading (see discussion below), plaintiffs are free to specify different or additional violations of 18 U.S.C. § 1962.

federal bank fraud statute; (5) sent communications by mail or telephone in 1996, 1997 and 1998 to Ms. Reisner, Moran, Justice Stoller, Justice Sherwood, Judge Jones, Judge Hardin and Judge Brieant, in furtherance of his scheme to defraud Ms. Reisner by systematically extinguishing any legal or equitable rights that she may have to the Premises; and (6) extorting money (mortgage payments) from Ms. Reisner in violation of N.Y.Penal Law § 155.05(2)(e).

Moran is similarly suggested to have committed the following predicate acts: (1) sent communications by mail or telephone in 1996, 1997 and 1998 to Ms. Reisner, Justice Stoller, Justice Sherwood, Judge Jones, Judge Hardin and Judge Brieant, in furtherance of a scheme to defraud Ms. Reisner by systematically extinguishing any legal or equitable rights that she may have to the Premises; and (2) extorting money (mortgage payments) from Ms. Reisner in violation of N.Y.Penal Law § 155.05(2)(e).

■■■■ Defendants Augello and Moran argue that any RICO claims arising in connection with these predicate acts are either time-barred, or could have been raised in the Supreme Court proceeding in 1996 and are therefore res judicata.[26] While the Supreme Court has established a uniform four-year limitations period for civil RICO actions, each circuit has its own rule to determine when a RICO cause of action accrues. *See Agency Holding Corp.,* 483 U.S. at 156–57, 107 S.Ct. 2759. The. Second Circuit has adopted a "separate accrual" rule such that "each time a plaintiff suffers an injury caused by a violation of 18 U.S.C. § 1962, a cause of action to recover damages based on that injury accrues to plaintiff at the time he discovered or should have discovered the injury." *See Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1102 (2d Cir. 1988). Therefore, any RICO claims based

on injuries to plaintiffs occurring prior to the October 3, 1996 commencement of the Supreme Court action are barred by the doctrine of res judicata. *See, e.g., Saud v. Bank of New York,* 929 F.2d 916 (2d Cir. 1991) (bank's default judgment in guaranty action barred guarantor's RICO action against bank under principles of res judicata; fraudulent acts alleged in support of RICO claims were alleged as affirmative defense in guaranty action).

■■■■ Plaintiffs filed the within complaint on May 8, 1998. Therefore, any RICO claims accruing as a result of injuries sustained by plaintiffs on or after October 3, 1996 are timely and properly brought before this Court. Moreover, neither the 1997 Sherwood Order, nor the 1998 Judgment and Warrant of Eviction preclude plaintiffs from asserting the aforementioned predicate acts in support of such claims because, as noted above, the issues with respect to the fraudulent nature of Augello's dealings with the parties have never been litigated or decided. Further, the four-year statute of limitations only limits the amount of damages recoverable by plaintiffs (*i.e.,* injuries occurring within four years before commencement of the action)—the term within which the predicate acts in support of the claim must occur is governed by the RICO statute itself. 18 U.S.C. § 1961(5); *see also Bankers Trust,* 859 F.2d at 1103 (plaintiffs may recover damages for all injuries which they discovered or should have discovered within the four years prior to filing complaint, regardless of dates of RICO violations causing the injuries); *Center Cadillac Inc. v. Bank Leumi Trust Co. of New York,* 808 F.Supp. 213 (S.D.N.Y.1992), *aff'd,* 99 F.3d 401 (2d Cir.1995) (plaintiffs recovery under RICO limited to thirty-six loan payments made within four years of commencing action).

---

26. Federal and State courts have concurrent jurisdiction over claims brought under the federal RICO statute. *See Tafflin v. Levitt,* 493 U.S. 455, 458–460, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990).

■ Although not all RICO claims are barred by the statute of limitations or res judicata, plaintiffs have failed to meet even the relaxed federal pleading requirements with respect to the non-barred RICO claims alleged in their complaint. First, Plaintiffs David Reisner and Eric Reisner have made no allegations whatever on their own behalf. · Although it is possible that they each sustained injury to their own property (*i.e.*, paid money to Augello) as a result of defendants' alleged RICO violations, no such facts are asserted. Second, although "pro se complaints are to be construed particularly liberally," and should be "interpreted to raise the strongest arguments they suggest," *Keane*, 974 F.Supp. at 338, we cannot say that Ms. Reisner, on her own behalf, has adequately plead: (1) the existence of a RICO "enterprise;" (2) the specifics of "injury to [her] property;" (3) whether the unlawful conduct was in violation of 18 U.S.C. § 1962(a), (b), (c) or (d); · or (4) the facts surrounding the predicate acts of extortion in violation of N.Y.Penal Law § 155.05(2)(e). Further, with respect to all predicate acts of mail and wire fraud, the complaint fails to state the approximate date of each communication and the contents of each misrepresentation made therein. In addition, the complaint fails to state the approximate date of each mortgage payment made to Albank in violation of the federal bank fraud statute. Therefore, with respect to the alleged predicate acts of mail fraud, wire fraud and bank fraud, the complaint fails to plead fraud with the particularity required by Fed. R.Civ.P. 9(b). *See Mills*, 12 F.3d at 1176.[27]

Nevertheless, we find that it would be in the interests of justice to give plaintiffs an opportunity to replead their RICO claims. Rule 15(a) of the Federal Rules of Civil Procedure provides that "leave [to amend] shall be freely given when justice so requires." Further, plaintiffs whose complaints are dismissed pursuant to Rule 9(b) are typically given an opportunity to amend their complaint. *See Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir.1986). Thus, to the extent that plaintiffs sustained any RICO injury on or after October 3, 1996, they may replead such claim by filing an amended complaint within 30 days of the date of this Order. The amended complaint should: (1) specify how and to what extent each plaintiff individually sustained an injury to property as a result of defendants' violation of the RICO statute; (2) describe the composition and purpose of the alleged "enterprise;" (3) plead any alleged predicate acts with the specificity required by Fed.R.Civ.P. 9(b); and (4) specify which sub-section(s) of 18 U.S.C. § 1962 defendants are alleged to have violated.[28]

## C. *Equitable Lien*

A federal court may exercise supplemental jurisdiction over state claims which "derive from a common nucleus of operative fact" with claims over which the court has original jurisdiction. 28 U.S.C. § 1367 (codifying *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)); *see Promisel v. First Am. Artificial Flowers*, 943 F.2d 251, 254 (2d Cir.1991). Plaintiffs' complaint has clearly and adequately alleged a pendent claim under New York law seeking the imposi-

27. On the other hand, the complaint adequately pleads the predicate act of bank fraud by Augello in connection with his application for a mortgage loan on July 26, 1977. However, this single predicate act is insufficient to sustain the RICO claim. 18 U.S.C. § 1961(5).

28. Numerous defendants have raised questions about the pro se status of David and Eric Reisner. It appears that Ms. Reisner drafted and signed the initial complaint on behalf of herself and her two sons. As Ms. Reisner is not an attorney, and her sons are not minors, she may not represent them before this Court. Should plaintiffs fail to retain an attorney in connection with the filing of their amended complaint, and assert claims on behalf of Eric and David Reisner, the amended complaint must be signed by Eric and David Reisner in compliance with Rule 11.

tion and enforcement of an equitable lien on the Premises.

■ An equitable lien is a right to charge specific property or its proceeds with the payment of a particular debt. *See generally,* 75 N.Y.JUR. *Liens* §§ 13–20 (1989). With respect to real property, an equitable lien is created by implication when a party standing in a confidential relationship with the legal owner of the property makes payments from his or her own funds toward the purchase price, reduction of the mortgage or improvements to the real property under circumstances which would entitle that party to restitution. *See Musso v. Tesmetges* (*In re Tesmetges*), 47 B.R. 385, 389–91 (E.D.N.Y. 1984); *Scivoletti v. Marsala,* 61 N.Y.2d 806, 808–09, 462 N.E.2d 126, 473 N.Y.S.2d 949 (1984); *Goldrick v. Goldrick,* 99 Misc.2d 749, 756–57, 417 N.Y.S.2d 410 (Sup.Ct.1979); 75 N.Y.JUR. *Liens* §§ 19–20; RESTATEMENT (First) OF RESTITUTION §§ 161–170 (1936). A court of equity imposes an equitable lien upon the property as a measure of restitution to prevent the owner of the property from being unjustly enriched by his abuse of the confidential relationship. 75 N.Y.JUR. *Liens* § 20; RESTATEMENT (First) OF RESTITUTION § 161 cmt. a (1936).[29] The remedy is the embodiment of the maxim, "equity regards as done that which ought to be done." *Tesmetges,* 47 B.R. at 390 n. 2.

■ The statute of frauds presents no bar to the recognition of an equitable lien upon real property because the lienor seeks to prevent unjust enrichment, not to enforce an oral conveyance of property. *See Rickerman v. Rickerman,* 34 A.D.2d 1069, 1070, 312 N.Y.S.2d 760 (3d Dep't 1970) and *Petrukevich v. Maksimovich,* 1 A.D.2d 786, 147 N.Y.S.2d 869 (2d Dep't 1956) (both citing *Foreman v. Foreman,* 251 N.Y. 237, 242, 167 N.E. 428, 429 (1929)). Further, with respect to mortgage payments, the equitable lien is merely a form of subrogation.[30]

■ Despite the under-current of fraudulent misrepresentation, actions seeking the imposition of a constructive trust or equitable lien are not based on actual fraud—rather they seek to prevent unjust enrichment. *See* RESTATEMENT (First) OF RESTITUTION § 161 cmt. a; *Rickerman,* 34 A.D.2d at 1070, 312 N.Y.S.2d 760 ("actual fraud need not be shown and unnecessary allegations of actual fraud do not transform the gravamen of the cause of action into an action to recover a judgment on the ground of fraud") Therefore, the statute of limitations for common-law fraud is not applicable. Claims for the creation of an equitable lien are subject to the six-year statute of limitations under N.Y.C.P.L.R. 213(1) pertaining to actions "for which no limitation is specifically prescribed by law." *See Tesmetges,* 47 B.R. at 391; *Goldrick,* 99 Misc.2d at 756–57, 417 N.Y.S.2d 410. The six-year time period requires the party claiming the lien to file an action within six years from the date the cause of action accrues (*i.e.,* the date when the property is wrongfully withheld from the party asserting the lien)—it does not limit the amount of the lien to payments or improvements made within the six years prior to filing. *See Tesmetges,* 47 B.R. at 391–92.

■ Once real property is found to be held subject to an equitable lien, if the owner of the property refuses to pay the amount of the lien, a court of equity may

---

**29.** If the party claiming the lien had the benefit of the use and occupancy of the premises, he or she will not be credited for the amount paid for taxes, insurance, or ordinary maintenance and repairs to the extent that such payments are off-set by the value of such use and occupancy. *See Towner v. Berg,* 5 A.D.2d 481, 488, 172 N.Y.S.2d 258 (3d Dep't 1958).

**30.** RESTATEMENT (First) OF RESTITUTION § 162 provides: ("where property of one person is used in discharging an obligation owed by another or a lien upon the property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee or lien-holder").

order the mortgage or sale of the property so that the lien may be paid out of the proceeds. *See* RESTATEMENT (First) OF RESTITUTION § 161 cmt. b; *Disanza v. Gaglione*, 126 Misc.2d 232, 482 N.Y.S.2d 413, 415 (Sup.Ct.1984) (ex-wife's equitable lien could be enforced through execution and sale of former husband's property unless he paid amount of lien; execution and sale available only where lienor previously held title to property). If the property has been transferred to a bona fide purchaser,[31] the court can trace the funds from the sale and impress a lien upon the property acquired with the proceeds. *See* RESTATEMENT (First) OF RESTITUTION § 161 cmt. e. If the sale proceeds were not used to purchase new property, or are otherwise untraceable, a court of equity may enter a decree holding the defendant personally liable for the amount of the lien. *See* RESTATEMENT (First) OF RESTITUTION §§ 4(d), 4(f), 161 cmt. e; *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 38 (2d Cir.1979).

Here, the complaint alleges that Ms. Reisner, an elderly widow, became intimately involved with Augello, and trusted him to act in her best interests in connection with the purchase of her new home, obeying all of his legal instructions and financial demands. These allegations are clearly sufficient to support a finding that she and Augello stood in a confidential relationship. *See Williams v. Lynch*, 245 A.D.2d 715, 716, 666 N.Y.S.2d 749, 751–52 (3d Dep't 1997), *appeal dismissed*, 91 N.Y.2d 957, 694 N.E.2d 886, 671 N.Y.S.2d 717 (1998) (finding confidential relationship where parties' relationship was analogous to that of husband and wife, plaintiff reasonably trusted defendant, relied on him to protect her interests and "acceded to defendant's self-serving demands in certain financial matters because she trusted him"); *Sharp v. Kosmalski*, 40 N.Y.2d 119, 121, 351 N.E.2d 721, 386 N.Y.S.2d 72 (1976) (confidential relationship found to exist between 56–year–old widower whose education did not go beyond the eighth grade and school teacher 16 years his junior with whom plaintiff had established a very close relationship after the death of his wife).

The complaint further alleges that Ms. Reisner paid the downpayment on the Premises out of her own funds and made all subsequent mortgage payments in cash to Augello. The initial downpayment and all mortgage payments made between 1977 and 1992 were made under the mistaken belief that she had title to the Premises. Although she learned in June of 1992 that her name was not on the deed, Ms. Reisner continued to live on the Premises and make mortgage payments (and possibly other improvements to the property) for many years thereafter.[32] The only conceivable explanation for such an arrangement is that, upon Ms. Reisner's discovery that title was held in Augello's name alone, Augello promised to transfer title to the Premises or grant Ms. Reisner a life estate in the Premises. Even in the absence of such an express (albeit oral) agreement,

---

**31.** A bona fide purchaser is someone who purchases the property without notice and for value. *See* RESTATEMENT (First) OF RESTITUTION § 161 cmt. d, § 172(1) and cmt. e, § 174. A properly filed lis pendens constitutes constructive notice to all potential purchasers and thus prevents the acquisition of the property by a bona fide purchaser capable of extinguishing an equitable interest in the property. *See* N.Y.C.P.L.R. § 6501. If property is transferred to someone who is not a bona fide purchaser, the purchaser acquires the property subject to the equitable lien. See RESTATEMENT (First) OF RESTITUTION § 168(1) and cmt. b.

**32.** This Court takes judicial notice of the documents filed by Augello with the Justice Court of the Village of Spring Valley in connection with the institution of the summary proceeding. The three-day rent demand notice served by Augello on Ms. Reisner pursuant to N.Y.R.P.A.P.L. § 711(2) as a condition precedent to the eviction proceeding shows that Ms. Reisner continued to make mortgage payments after discovery of the deed. The three-day notice claims that Ms. Reisner owed the following "rent" to Augello: $5,400 for 1992, $5,520 for 1993, $6,540 for 1994, $10,185 for 1995, and $4,325 for 1996.

the complaint sufficiently states a claim for the creation of an equitable lien by implication. *See* 75 N.Y.Jur. *Liens* §§ 16, 19. Assuming the truth of the allegations set forth in the complaint, Augello would be unjustly enriched if he were to enjoy the benefit of any improvements made to, or increased equity in, the Premises under these circumstances. Therefore, Ms. Reisner would be entitled to an equitable lien in the full amount of her expenditures as long as they amounted to less than the full purchase price of the property.

■ Further, Ms. Reisner's claim asserting an equitable lien on the Premises is not barred by the doctrine of res judicata. Since 1977, Augello has been under a continuing obligation to transfer title or some lesser interest in the Premises to Ms. Reisner. As long as Ms. Reisner continued to occupy the Premises, the implied trust relationship was not breached. Indeed, the cause of action did not accrue until the Premises were wrongfully withheld from Ms. Reisner, *i.e.,* the date that she was evicted from the Premises, which she alleges to have been April 13, 1998. *See Tesmetges,* 47 B.R. at 391–92. Therefore, Ms. Reisner's claim for an equitable lien could not have been brought in the Supreme Court proceeding before Justice Sherwood. Having filed the within complaint on May 6, 1998, Ms. Reisner has asserted a timely claim for the imposition of an equitable lien against the Premises for payments she made toward the purchase price, reduction of the mortgage and improvements to Premises. The fact that damages are sought for the alleged RICO violations does not mean that Ms. Reisner's injuries are fully compensable at law.

A cause of action for an equitable lien is adequately pled and the ad damnum provision requests "such other and further relief as may be just herein." [33]

### D. Abuse of Process

Ms. Reisner repeatedly alleges that Augello and Moran wrongfully evicted her from the Premises on April 13, 1998 in furtherance of the plot to steal the Premises.[34] Interpreting these allegations "to raise the strongest arguments they suggest," *Keane,* 974 F.Supp. at 338, we find that Ms. Reisner has also alleged a pendent claim under New York law for abuse of process against Augello and Moran.

■ A claim for abuse of process is established upon proof that the defendant: (1) having an intent to do harm without economic or social excuse or justification; (2) used regularly issued civil or criminal process; (3) in a perverted manner to obtain a collateral objective; and (4) which proximately caused actual or special damages to plaintiff's person or property. *See generally* 86 N.Y.Jur. *Process and Papers* §§ 133–143 (1989). Only process that compels the performance or forbearance of some prescribed act can be abused. *See* 86 N.Y.Jur. *Process and Papers* § 135. A warrant of eviction therefore qualifies as process capable of being abused. *See, e.g., Spiegel v. Goodman,* 130 A.D.2d 570, 515 N.Y.S.2d 511 (2d Dep't 1987), *appeal dismissed,* 70 N.Y.2d 951, 519 N.E.2d 624, 524 N.Y.S.2d 678 (1988); *Brandt v. De Kosenko,* 57 Misc.2d 574, 293 N.Y.S.2d 489 (App.Term 1968). If a warrant of eviction is used for its proper purpose, (*i.e.,* to evict a holdover tenant from a landlord's prop-

**33.** Plaintiffs' complaint does not contain a discrete cause of action expressly requesting the imposition of an equitable lien. However, the allegations discussed above adequately plead such a claim on behalf of Ms. Reisner. In light of the fact that plaintiffs have been granted leave to replead their RICO claims, Ms. Reisner is hereby granted leave to replead her equitable lien claim in the "short and plain" manner required by Fed.R.Civ.P. 8(a). It does not appear that plaintiffs David and

Eric Reisner can allege the existence of a confidential relationship between themselves and Augello. Therefore, the claim for an equitable lien should be pled only on behalf of Ms. Reisner.

**34.** Although plaintiffs David and Eric Reisner were also evicted from the Premises, the allegations in the complaint were made solely on behalf of Ms. Reisner.

erty), the mere showing of malice or evil intent on the part of the defendant will not support an action for abuse of process. *See* 86 N.Y.Jur.. *Process and Papers* § 136.[35] Rather, a claim will lie only if the defendant used the process to gain a "collateral advantage" not sanctioned by law such as extortion, blackmail or retribution, or to harass the plaintiff or coerce the plaintiff to give up a claim against the defendant. *See* 86 N.Y.Jur. *Process and Papers* § 137; *Hauser v. Bartow,* 273 N.Y. 370, 374, 7 N.E.2d 268, 269–70 (1937).

■ Here, the facts stated, if true, would support the inference that Augello used the warrant of eviction either to coerce Ms. Reisner to pay off his mortgage or, more likely, to allow him to sell the Premises to a bona fide purchaser, thereby extinguishing Ms. Reisner's equitable interest in the Premises, and further sheltering himself from liability in connection with his alleged fraudulent acquisition of title to and equity interest in the Premises. *See, e.g., Station Assocociates, Inc. v. Long Island R. Co.,* 18 Misc.2d 1092, 188 N.Y.S.2d 435 (Sup.Ct.1959) (finding abuse of process in contract action where plaintiff's collateral objective was to relieve itself of any liability incurred by virtue of its own abandonment of contract at issue).

■ A claim for abuse of process can also be stated against an attorney who prepares or causes the abused process to be issued in bad faith and for the purpose of gaining a collateral advantage. *See Kalika v. Stern,* 911 F.Supp. 594 (E.D.N.Y. 1995) (claim against attorney dismissed for failure to allege collateral objective); *Greenfield v. Schultz,* 173 Misc.2d 31, 660 N.Y.S.2d 624 (Sup.Ct.1997), *aff'd in relevant part,* 251 A.D.2d 67, 673 N.Y.S.2d 684 (1st Dep't 1998) (claim against attorney dismissed where attorney had good faith basis for seeking discovery and no collateral objective proven); *Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n,*

*Inc.,* 38 N.Y.2d 397, 343 N.E.2d 278, 380 N.Y.S.2d 635 (1975) (attorney abused subpoena duces tecum); *Weiss v. Hunna,* 312 F.2d 711 (2d Cir.1963); *Dishaw v. Wadleigh,* 15 A.D. 205, 44 N.Y.S. 207 (3d Dep't 1897) ("there is no reason why an attorney should not be held liable, and many why he should"). The allegations in the complaint coupled with judicial notice of the patently obvious elimination of Ms. Reisner's name from the deed to the Premises, certainly support an inference of bad faith on the part of Moran in connection with the eviction proceeding. However, Moran's collateral objective cannot be gleaned from the complaint as it now stands.

Accordingly, plaintiffs are hereby granted leave to replead the pendent claims of abuse of process against Augello and Moran. The amended complaint should contain a "short and plain statement" of the claims on behalf Ms. Reisner as well as David and Eric Reisner if such claims may be stated on their behalf in compliance with the strictures of Fed.R.Civ.P. 11. The amended complaint should more specifically allege: (1) Moran's purported knowledge of Augello's prior fraudulent acts and present motivations; (2) what collateral objective Moran had, if any, in preparing and obtaining the issuance of the Warrant of Eviction; and (3) how plaintiffs were damaged by Augello and Moran's alleged abuse of process.

## VII. *Augello Defendants' Motion to Cancel the Notice of Pendency*

■ A Notice of Pendency, or lis pendens, may be filed in any action which would affect the title to, or possession, use or enjoyment of real property, N.Y.C.P.L.R. § 6501; or any action seeking to establish and impress an equitable lien. *See Rosenberg v. Ritter,* 34 Misc.2d 1099, 1100, 229 N.Y.S.2d 766, 767 (Sup.Ct. 1962). Plaintiffs filed a Notice of Pendency with the Rockland County Clerk in connection with the within action in or about May of 1998. In conjunction with their motion

---

**35.** However, malice may give rise to a claim for punitive damages. *See id.*

to dismiss the complaint, the Augello defendants have requested that the Notice of Pendency be canceled because Augello has contracted the sell the Premises but is unable to close on the sale.[36] A lis pendens should be canceled only if the facts alleged in the complaint are insufficient to support a claim for an equitable lien. *See id.,* 34 Misc.2d at 1100, 229 N.Y.S.2d at 767–68. Having found that the complaint sufficiently alleged a claim for an equitable lien on behalf of Ms. Reisner, we hereby deny, without prejudice, defendants' motion to vacate the lis pendens.

## CONCLUSION

For the reasons discussed above, the motions of Albank, the village defendants, the state defendants, Sapir and the federal judicial defendants are granted. The Augello defendants' motion to dismiss is granted only insofar as it seeks: (1) dismissal of all claims against Michael Augello, Jr.; (2) dismissal of the RICO claims against Augello and Moran; and (3) dismissal of the abuse of process claim against Moran, subject to repleading by plaintiffs within 30 days of the date of this Order.

SO ORDERED.

---

**36.** In an apparent violation of his obligation of candor as an officer of the court, Moran telephoned our chambers on several occasions to request that we decide the motion to cancel the lis pendens on an expedited basis because Albank was threatening to foreclose on the Premises. Albank thereafter advised the Court that, not only has it never threatened foreclosure, but the mortgage was paid in full by Augello in January, 1998. Therefore, the lis pendens and potential equitable lien are the only obstacles preventing Augello from selling the Premises.