WADDELL & REED FINANCIAL, INC., Waddell & Reed, Inc., and Waddell & Reed Investment Management Company, Plaintiffs,

v.

TORCHMARK CORPORATION, Ronald K. Richey, Harold T. McCormick, and Louis T. Hagopian, Defendants.

No. CIV.A. 01–2372–KHV.

United States District Court, D. Kansas.

Nov. 20, 2003.

James D. Griffin, Stephen J. Torline, Blackwell, Sanders, Peper, Martin, LLP, Kansas City, MO, L. Steven Grasz, Megan Sebastian Wright, Nicole B. Theophilus, Thomas H. Dahlk, Trenten P. Bausch, Blackwell, Sanders, Peper, Martin, LLP, Omaha, NE, for Plaintiffs.

Betsy Palmer Collins, Alston & Bird, Atlanta, GA, Brenda Ranee Mesker, Matthew C. Miller, Scott C. Nehrbass, William R. Sampson, Shook, Hardy & Bacon, L.L.P., Overland Park, KS, Hobart A. McWhorter, Jr., James W. Gewin, Michael R. Pennington, Bradley, Arant, Rose & White, LLP, Birmingham, AL, William J. Baxley, Baxley, Dillard, Dauphin & McKnight, Birmingham, AL, for Defendants.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

Plaintiffs have filed suit against Torchmark Corporation ("Torchmark") and Ronald K. Richey, Harold T. McCormick and Louis T. Hagopian. Torchmark is the former corporate parent of Waddell & Reed, Inc. The individual defendants are former common directors of Torchmark and Waddell & Reed Financial, Inc. Plaintiffs seek to recover under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and assert Kansas common law claims for breach of fiduciary duty, knowing participation in breach of fiduciary duty, and interference with pro-

spective business relations. This matter is before the Court on *Defendants' Motion For Partial Dismissal Of Plaintiffs' Amended Complaint* (Doc. # 124) filed June 27, 2003. For reasons stated below, defendants' motion is overruled.

### Factual Background

Plaintiff's amended complaint alleges the following facts: [1]

Before November of 1998, Waddell & Reed, Inc. ("W & R") and United Investors Life Insurance Company ("UILIC") were wholly-owned subsidiaries of Torchmark. UILIC issued variable insurance products which W & R distributed and underwrote. Before March 4, 1998, individual defendant Ronald K. Richey was chief executive officer and chairman of the board of Torchmark. Co-defendants Harold T. McCormick and Louis T. Hagopian were directors of Torchmark.

In November of 1998, Torchmark spun off W & R. W & R is now a separate and independent company which markets insurance and annuity products. Waddell & Reed Financial, Inc. ("W & R Financial") is now the parent corporation of W & R, and Waddell & Reed Investment Management Company ("W & R Investment") is now a subsidiary of W & R. After the spin off, Torchmark and its former parent corporation, W & R Financial, shared seven directors including Richey, McCormick and Hagopian.

Before the spin off, UILIC compensated W & R for its distribution and underwriting services under a compensation schedule which had been established in 1990 under a principal underwriting agreement ("PUA"). Immediately before the spin off, UILIC and W & R amended the PUA to provide that it would terminate on December 31, 1998, shortly after the spin off. UILIC and W & R had planned to execute a new contract which in part reflected the economic reality that the companies were no longer owned by the same parent corporation. The parties could not reach such an agreement by December 31, 1998, so they again amended the PUA to allow further negotiations in 1999. In early 1999, however, negotiations ceased and W & R began evaluating proposals from other life insurance companies. In approximately May of 1999, W & R and Security Benefit Life Insurance Company ("Security Benefit") agreed in principle to jointly develop and distribute variable life and annuity products beginning January 1, 2000.

On April 19, 1999, UILIC entered into a secret agreement with United Securities Alliance, Inc. ("USA") to develop a new variable product that USA (but not W & R) would distribute. Around late June of 1999, to secure continued distribution of its products until USA products could be introduced, UILIC in bad faith resumed negotiations on a new agreement with W & R. On July 8, 1999, W & R and UILIC reached agreement with regard to compensation and product features effective January 1, 2000 (the "Letter Agreement"). Since August of 1999, the Waddell & Reed entities have characterized the agreement as binding, while UILIC and Torchmark have characterized the agreement as tentative. The Letter Agreement provided that in exchange for W & R's agreement to stop considering possible deals with other insurance companies (including Security Benefit) and to not replace existing UILIC policies, UILIC would pay a certain per-

---

1. To provide necessary background for the issues raised in defendants' motion to dismiss, the Court has also included some facts from its order on defendants' motion for summary judgment, which includes many factual allegations in various pleadings which the parties filed in related litigation in Alabama. *See Memorandum And Order* (Doc. # 79) filed February 3, 2003.

centage on the assets of W & R's existing, in-force variable annuity book of UILIC business.[2] The agreement also provided that UILIC and W & R would commit the necessary resources to design, create, implement and introduce competitive products and product features. Based on this agreement, W & R ceased negotiations with Security Benefit. Despite its belief that the Letter Agreement was binding, W & R also continued to negotiate with UILIC on a more formal agreement. During those negotiations, UILIC asked W & R to agree not to replace UILIC variable life insurance and annuity policies with policies issued by another insurance company. W & R refused to agree to such a blanket restriction.

In January of 2000, W & R began to withhold revenue which it was receiving from customers on UILIC business. Through its independent financial advisors, W & R also began distributing UILIC's new variable product, the Advantage Gold Variable Annuity. W & R maintains that UILIC did not object to the sale of its products or demand that W & R return any monies which it had received. UILIC did inquire about how W & R calculated its compensation, but it did not object after W & R explained the calculation method.

UILIC and W & R continued to negotiate the enforceability of the Letter Agreement and a possible restriction on W & R's ability to replace UILIC policies. During the negotiations, Torchmark threatened that if W & R did not agree to UILIC's terms, Torchmark would terminate W & R Investment as investment adviser for Torchmark accounts and institute legal action. The parties did not reach further agreement, so on May 3, 2000, UILIC sued W & R in the Circuit Court of Jefferson County, Alabama. UILIC also sued W & R Financial, Waddell & Reed Financial Services, Inc., Waddell & Reed Insurance Agency, Inc., and Waddell & Reed Insurance Agency of Alabama, Inc. in that case.[3] For ease of reference, the Court collectively refers to all such defendants as the "Alabama Defendants." UILIC asserted claims for breach of contract, conversion and tortious interference with the contractual relations between UILIC and its policyholders. UILIC alleged that the original underwriting agreement between UILIC and W & R was controlling and that W & R could not withhold funds based on the Letter Agreement. UILIC also alleged that W & R had wrongfully replaced and threatened to replace its business with products by other insurance companies.[4]

Meanwhile, on May 24, 2000, the Alabama Defendants filed their answer and counterclaims against UILIC, joining

2. The complaint does not explain whether this asset-based fee would be paid annually, monthly or otherwise.

3. Waddell & Reed Insurance Agency, Inc. and Waddell & Reed Insurance Agency of Alabama, Inc. solicited applications and distributed non-variable insurance products on behalf of UILIC.

4. At about the same time as UILIC filed suit in Alabama, in May of 2000, it introduced USA products which competed directly with the products which W & R distributed.

On May 5, 2000, two days after UILIC filed suit in Alabama, W & R filed a declaratory judgment action against UILIC in the District Court of Johnson County, Kansas. W & R asked the Kansas court to declare that the Letter Agreement was binding and that W & R was justified in withholding revenue under that agreement. UILIC removed the case to this Court, then asked the Court to decline jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). The Honorable Carlos Murguia refused to exercise jurisdiction under the Declaratory Judgment Act and dismissed the case. *See Waddell & Reed, Inc. v. United Invs. Life Ins. Co.*, No. 00–2209–CM, 2000 WL 1595751 (D.Kan. Oct.18, 2000). Neither party appealed.

Torchmark and Richey as third-party defendants to their counterclaims. The counterclaims asserted fraudulent inducement, fraudulent suppression, breach of fiduciary duty, tortious interference with business relations, breach of contract, estoppel and unjust enrichment.[5]

Beginning in January of 2001, W & R and their investment advisors began to replace UILIC policies with policies issued by Nationwide Insurance Company ("Nationwide"). On March 1, 2001, UILIC filed a second amended complaint in the Alabama litigation. On March 8, 2001, W & R and W & R Financial filed an answer and counterclaims and again included counterclaims against Richey and Torchmark. In the counterclaims, in addition to acts which they had asserted in their initial counterclaims, W & R and W & R Financial alleged certain facts pertaining to events that had occurred after the filing of their initial counterclaims in May of 2000. In particular, W & R and W & R Financial alleged that (1) Torchmark and its affiliates terminated W & R Investment as the investment adviser for Torchmark's general account assets and pension plan assets; (2) beginning in May of 2000 when UILIC filed suit in Alabama, UILIC introduced USA products which competed directly with the products which W & R distributed; (3) UILIC structured the USA products (including credits for certain transaction costs) so that they would be attractive replacements for UILIC products which W & R distributed;[6] and (4) UILIC never allowed W & R to distribute USA products. W & R and W & R Financial also alleged that based on Richey's breach of fiduciary duty to W & R Financial, UILIC had negotiated in bad faith with W & R to delay legal action until UILIC could file suit in Alabama and bring USA products to market in May of 2000. *See id.* ¶ 75. W & R and W & R Financial also alleged that Torchmark and Richey had intentionally interfered with various contractual relations between W & R and UILIC by (1) refusing to give W & R Financial a limited power of attorney to obtain a private letter ruling from the IRS to facilitate recapitalization of its stock, unless W & R altered its arrangement with UILIC; (2) threatening to terminate W & R Investment as investment adviser for Torchmark general account assets and pension plan assets and executing that threat in September 2000; and (3) threatening to institute legal action against W & R and carrying out that

---

**5.** The Alabama Defendants specifically alleged that UILIC had breached the Letter Agreement and fraudulently induced them to enter into and perform the Letter Agreement and to abandon their arrangement with alternative providers, including Security Benefit. In their claim of fraudulent suppression, the Alabama Defendants alleged that UILIC, Torchmark and Richey (through McCormick, Hagopian and others) had failed to disclose that UILIC would not improve its products and services or agree to pay additional compensation without an agreement that UILIC policies would not be replaced. In their claim for breach of fiduciary duty, the Alabama Defendants alleged that Richey had breached his fiduciary duty to W & R Financial by serving on the board of directors of both Torchmark and W & R Financial and making adverse decisions regarding W & R Financial while serving on its board. In support of their claim of tortious interference with business relations, the Alabama Defendants alleged that Richey and Torchmark had intentionally interfered with various contractual relations between W & R, Waddell & Reed Insurance Agency, Inc., Waddell & Reed Insurance Agency of Alabama, Inc. and UILIC by threatening legal action if W & R continued to exercise its contractual rights and causing or helping to cause UILIC to bring the Alabama action against W & R Financial and its affiliates.

**6.** For example, UILIC and USA offered a 5 per cent credit on initial purchases to help offset surrender charges which policyholders might incur if they replaced UILIC policies which W & R distributed with USA policies.

threat in May 2000. UILIC, Torchmark and Richey never responded to these counterclaims.

On April 5, 2001, the Alabama court granted partial summary judgment in favor of UILIC, ruling that UILIC had the right to terminate the PUA on 60 days' notice. In terminating the PUA, UILIC cut off W & R's right to future compensation regarding UILIC policies that were in force before January 1, 2000. Shortly after the Alabama court order, the parties informally stayed all discovery in the case and pursued settlement negotiations through July of 2001.

On July 26, 2001, W & R and W & R Financial (who were defendants and counterclaim plaintiffs in the Alabama case) filed this suit against Torchmark and Richey (who were third-party counterclaim defendants in the Alabama case) and McCormick and Hagopian (who were not parties to the Alabama litigation). W & R Investment,[7] which was not a party to the Alabama case, joined W & R and W & R Financial as a plaintiff in this case. The Court collectively refers to these three as the "Kansas Plaintiffs." The Kansas Plaintiffs assert claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., breach of fiduciary duty, knowing participation in breach of fiduciary duty and interference with prospective business relations. Specifically, Count I alleges that from October 1997 through May 2001, Torchmark and Richey engaged in a pattern of racketeering activity designed to injure W & R, W & R Financial and W &

R Investment. See Complaint (Doc. # 1) ¶¶ 60–61.[8] Count II alleges that Richey, McCormick and Hagopian breached their fiduciary duties as directors of W & R Financial. Count III alleges that Torchmark knowingly participated and induced Richey, McCormick and Hagopian to breach their duties as directors of W & R Financial. On Counts I, II and III, the Kansas Plaintiffs seek damages for (1) the decline in value of the W & R Financial interest in W & R Financial Services, Inc.; (2) losses which W & R and W & R Investment sustained on account of the delay in bringing a new competitive variable annuity product to market; (3) the loss of revenue which W & R sustained regarding UILIC policies that would have been replaced beginning in January of 2000; (4) substantial litigation costs which W & R incurred in Alabama; and (5) fees which W & R Investment lost when Torchmark terminated it as investment advisor for Torchmark general accounts. See id. ¶¶ 62–64. Count IV alleges that Torchmark, Richey, McCormick and Hagopian intentionally interfered with the business relations of UILIC and W & R, and seeks compensation for the economic loss which W & R incurred from that interference.

On August 3, 2001, UILIC filed a third amended complaint in the Alabama case. It re-asserted all but one claim from the second amended complaint and included six new claims relating to replacement of UILIC policies that occurred after UILIC terminated the PUA effective April 30, 2001. In September of 2001, the Alabama Defendants attempted to dismiss their

---

7. W & R Investment is a wholly-owned indirect subsidiary of W & R Financial. W & R Investment is not a party to the Alabama litigation and no claim for damages was made in the Alabama litigation on its behalf.

8. The Kansas Plaintiffs assert that UILIC, W & R Financial and the common directors of W & R Financial and Torchmark constitute enterprises within the meaning of RICO and that continuously from October 1997 through May 2001, defendants actively conducted the affairs of these enterprises through multiple acts of mail and wire fraud, an act of extortion and one act of interstate travel in aid of the racketeering enterprises. See Complaint ¶¶ 60–61.

counterclaims against Torchmark and Richey without prejudice. The Alabama court refused to allow a dismissal without prejudice but on October 5, 2001, announced that it would let the Alabama Defendants drop the counterclaims against Torchmark and Richey if they agreed that the dismissal was with prejudice "on claims that were asserted or could have been asserted." Transcript of October 5, 2001 Hearing at 107, attached as Exhibit 23D to *Defendants' Reply Appendix* (Doc. # 64) filed May 2, 2002.[9] The Alabama Defendants did not agree to such a condition, and the Alabama court eventually granted summary judgment on the counterclaims in favor of Torchmark and Richey. On October 25, 2002, the Alabama Supreme Court affirmed the trial court rulings with regard to Torchmark and Richey.

On March 6, 2002, Torchmark and Richey filed a motion for summary judgment in this case, arguing that by virtue of the Alabama judgment, the doctrine of res judicata precludes plaintiffs' claims against them in this jurisdiction. The Kansas Plaintiffs argued that res judicata did not apply because the Alabama judgment was not on the merits and they could not have brought the instant claims in the Alabama action. The Kansas Plaintiffs also maintained that W & R Investment was not bound by the Alabama judgment because it was not a party to that action.

On February 4, 2003, the Court sustained Torchmark and Richey's motion for summary judgment, in part. In particular, the Court granted them summary judgment on the claims of W & R and W & R

Financial, *see Memorandum And Order* (Doc. # 79) at 36, but overruled defendants' motion for summary judgment on the claims of W & R Investment. *See id.* at 36–37.

On June 6, 2003, plaintiffs filed an amended complaint. *See Plaintiffs' Amended Complaint* (Doc. # 114). In the amended complaint, W & R and W & R Financial again assert a RICO claim against Torchmark and Richey. In addition to the allegations in their original complaint, plaintiffs' amended complaint alleges the following facts:

1. Torchmark directed UILIC to have deposition subpoenas issued and served on W & R investment advisors and their customers who decided to enter into a 1035 exchange of a UILIC variable annuity for a variable annuity issued by Nationwide.[10] *Id.* ¶ 73.

2. In January and February 2001, UILIC attorneys telephoned W & R advisors, and in at least one call, attempted to implicate W & R in engaging in a scheme to engage in wholesale replacement of UILIC policies. *Id.* ¶ 75.

3. After UILIC failed to discover any scheme to exchange UILIC policies with Nationwide polices, Torchmark directed UILIC to mail a letter dated February 28, 2001, which served as notice terminating the PUA effective April 30, 2001 and terminating the general agent contract effective December 31, 2001. *Id.* ¶ 77.

4. By terminating the PUA and its relationship with W & R, Torchmark was able to increase the short-term profita-

---

9. On November 13, 2001, the Alabama Defendants filed a petition for writ of mandamus, asking the Alabama Supreme Court to require the trial court to grant their motion to dismiss Torchmark and Richey without prejudice pursuant to Rule 41(a)(2), Ala. R. Civ. P. On January 12, 2002, the Alabama Supreme Court denied their petition.

10. A "1035 exchange" refers to a tax exempt exchange of one annuity contract for another. *See* 26 U.S.C. § 1035 (provides tax exempt status for various exchanges of life insurance, endowment and annuity contracts).

bility of UILIC (when surrender fees were incurred) and to greatly increase the damages sought in the Alabama litigation. *Id.* ¶¶ 78–79.

5. Torchmark and UILIC also caused the National Association of Securities Dealers ("NASD") to investigate the 1035 exchanges and on October 10, 2001, UILIC filed a lawsuit in California against W & R, W & R Financial and others, alleging that the exchanges were unlawful. *Id.* ¶ 79.

In the amended complaint, W & R Financial seeks damages on its RICO claim for (1) the cost of the Alabama litigation, (2) the cost of the NASD investigation and possible imposition of a fine, (3) the cost of the California litigation, (4) the amount of any judgment entered after retrial in the Alabama litigation, and (5) the amount of any judgment in the California litigation. *Id.* ¶ 87. W & R seeks damages on its RICO claim for income from lost variable sales in 2001. *See id.* ¶ 88.

■ On June 27, 2003, Torchmark and Richey filed a motion to dismiss which, as noted, argues that by virtue of the Alabama judgment, the doctrine of res judicata precludes the amended RICO claims of W & R and W & R Financial.[11] W & R and W & R Financial assert that their amended RICO claims are not part of the same causes of action asserted in the Alabama litigation.

### Analysis

As Alabama Defendants, W & R and W & R Financial asserted counterclaims and amended counterclaims against Torchmark and Richey. Torchmark and Richey argue that because the Alabama court entered judgments in their favor on those counterclaims, and in light of this Court's previous rulings, res judicata bars the amended RICO claims of W & R and W & R Financial.

■ The Full Faith and Credit Statute, 28 U.S.C. § 1738, requires a federal court to apply the preclusion law of the state in which the previous judgment was rendered. *See Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). In Alabama, "the elements of res judicata are: (1) a prior judgment on the merits; (2) rendered by a court of competent jurisdiction; (3) substantially the same parties involved in the prior case are involved in the current case; and (4) the same cause of action presented in both suits." *Ex parte Jefferson County,* 656 So.2d 382, 384–85 (Ala.1995); *see Lee L. Saad Constr. Co., Inc. v. DPF Architects, P.C.,* 851 So.2d 507, 517 (Ala.2002). If those four elements are present, any claim that was adjudicated or could have been adjudicated in the prior action is barred from further litigation. *Equity Res. Mgmt., Inc. v. Vinson,* 723 So.2d 634, 636 (Ala.1998); *see Lee L.*

---

11. Based on the Court's previous order, Torchmark also seeks dismissal of Count III of the amended complaint, which alleges that it knowingly participated in breaches of fiduciary duties by McCormick and Hagopian. In the original complaint, Count III also alleged that Torchmark knowingly participated in breaches of fiduciary duties by Richey. W & R Financial, the only plaintiff as to Count III, concedes that the Court's previous ruling bars amended Count III, which is identical in all respects to the earlier Count III except that Richey is excluded. *See Brief In Opposition To Defendants' Motion For Partial Dismissal Of Plaintiffs' Amended Complaint* (Doc.

# 128) filed July 17, 2003 at 7. Despite this admission, W & R Financial asserts that the Court's previous ruling is erroneous as to the claim that Torchmark knowingly participated in the breaches of fiduciary duties by Hagopian and McCormick. W & R Financial did not timely seek reconsideration of the prior ruling and it does not seek reconsideration at this time. Based on plaintiff's admission that the Court's previous ruling bars Count III, the Court need not address defendants' arguments as to that count. W & R Financial states that it included Count III in the amended complaint solely to preserve the issue for appeal. *See id.* at 7–8.

*Saad,* 851 So.2d at 517. In this case, the parties disagree whether plaintiffs' amended RICO claims are based on the causes of action asserted in Alabama.

■ Under Alabama law, to determine whether the claims asserted in two cases are part of the same cause of action, the Court applies the same evidence test, *i.e.* "whether the same evidence substantially supports both actions." *Gonzalez, LLC v. DiVincenti,* 844 So.2d 1196, 1205 (Ala. 2002); *see Garris v. S. Ala. Prod. Credit Ass'n,* 537 So.2d 911, 914 (Ala.1989) (regardless of form of action, issue is same for res judicata purposes when substantially same evidence supports both actions). "Res judicata applies not only to the exact legal theories advanced in the prior case, but to all legal theories and claims arising out of the same nucleus of operative facts." *Wesch v. Folsom,* 6 F.3d 1465, 1471 (11th Cir.1993), *cert. denied sub nom., Sinkfield v. Wesch,* 510 U.S. 1046, 114 S.Ct. 696, 126 L.Ed.2d 663 (1994); *see Smith v. Scott Paper Co.,* 620 So.2d 976, 982 (Ala.1993).

Relying on this Court's previous rulings, defendants argue that the additional events alleged in the amended RICO claims reflect additional damages, but not a new and independent cause of action. This Court previously held:

> [B]ecause res judicata principles do not require a party to amend its pleadings to assert supplemental claims that arise after its initial complaint or counterclaim, the relevant cutoff date for res judicata purposes is May 24, 2000—the date when W & R and W & R Financial filed their initial counterclaims in Alabama. W & R and W & R Financial assert that the following events had not occurred when they filed their initial counterclaims in Alabama: (1) Torchmark had not terminated W & R Investment as the investment advisor for Torchmark general accounts; (2) UILIC employees had not interfered with the

W & R sales force in an effort to disrupt their relationships with W & R and prevent the sale of competitive variable products by Nationwide; and (3) the Alabama Defendants had not incurred substantial litigation costs in the Alabama case. All of these events relate to the computation of damages, however, and not the accrual of a new and independent cause of action.

A difference in damages is not grounds for distinguishing two causes of action for res judicata purposes. *Robinson v. Holley,* 549 So.2d 1, 2 (Ala.1989); *see id,* (cause of action grows out of wrongful action and not out of various forms of damages that may flow from wrongful act); *see also Estate of Young v. Williams,* 810 F.2d 363, 365 (2d Cir. 1987) (different requests for relief do not limit scope of res judicata). Despite the fact that additional *damages* may have accrued after W & R and W & R Financial filed their counterclaims in Alabama, the issue is whether their *claims* or *causes of action* accrued after they filed their initial counterclaims. The Kansas Plaintiffs have not explained how any of the three categories of damages relate to the accrual of a claim or cause of action that they assert in this case. Nor have they argued that any causes of action in the Kansas complaint accrued after they filed their initial counterclaims in Alabama. As explained above, all four counts of the Kansas complaint are part of the causes of action asserted in Alabama. Accordingly, the claims which W & R and W & R Financial assert in this case are barred under res judicata principles.

The three additional categories of damages are barred for other reasons as well.

As to the termination of W & R Investment as investment advisor for Torchmark general accounts, W & R and W & R Financial included this alle-

gation in their amended counterclaims in Alabama. *See Alabama Defendants' Amended Counterclaims* ¶¶ 51, 82. Because W & R and W & R Financial asserted this "claim" in Alabama, they cannot reassert it in this action. *See Equity Res. Mgmt.*, 723 So.2d at 636; *Manning*, 953 F.2d at 1359 (claims that "could have been brought" are claims in existence when original complaint is filed or claims actually asserted by supplemental pleadings). In any event, this claim primarily involves W & R Investment. As explained below, W & R Investment is not barred from asserting this claim because it was not a party to the Alabama litigation.

The Kansas Plaintiffs also allege that after UILIC filed the Alabama litigation, its employees interfered with the W & R sales force in an effort to disrupt their relationships with W & R and prevent the sale of competitive variable products by Nationwide. *See Complaint* ¶ 40 ("After the filing of the Alabama litigation, United Investors' employees have telephoned and corresponded with the W & R sales force in an effort to disrupt their relationship with W & R and prevent the sale of competitive variable products issued by another insurance company."). Plaintiffs rely on this allegation to establish a predicate act of mail fraud, *see Complaint* ¶ 60, Exhibit A, and not an independent claim. Moreover, W & R and W & R Financial raised a similar claim in Alabama. In their amended counterclaims of March, 2001, W & R and W & R Financial alleged that after commencement of the Alabama case in May of 2000, Torchmark and Richey and others engaged in an effort to prevent the sale of competitive variable annuity policies. *See Alabama Defendants'*

*Amended Counterclaims* ¶¶ 52–55. The allegations in the Alabama counterclaims could easily encompass the assertions in paragraph 40 of the Kansas complaint. W & R and W & R Financial are therefore barred from seeking damages from such conduct in this case. *See Equity Res. Mgmt.*, 723 So.2d at 636; *Manning*, 953 F.2d at 1359.

The Kansas Plaintiffs also allege that they incurred substantial litigation costs in the Alabama action, presumably referring to attorneys' fees and other litigation expenses. Though the precise amount was uncertain when W & R and W & R Financial filed their initial counterclaims in Alabama, they had already retained counsel and knew when they filed their counterclaims that they had sustained damages for attorneys fees, litigation expenses and court costs. Indeed, W & R and W & R Financial sought recovery of their fees and costs in the Alabama action. *See Alabama Defendants' Initial Counterclaim* at pp. 31, 33, 35, 36, 38.

For these reasons, the Court sustains defendants' motion for summary judgment on the claims which W & R and W & R Financial assert against Torchmark and Richey in this case.

*Memorandum And Order* (Doc. # 79) at 29–33 (footnotes omitted).

W & R and W & R Financial assert that the amended RICO claims in this case are not part of the Alabama causes of action because when they filed their amended counterclaims in Alabama, these RICO claims had not matured. Defendants compare the amended RICO claims and the allegations which the Court previously found were merely damage events and not events which gave rise to independent claims.[12] In part, the Court characterized

---

**12.** Defendants apparently argue that plaintiffs could have brought their claims in the Ala-

bama case because they all accrued before final judgment in the Alabama court. Defen-

plaintiffs' prior allegations as ones related solely to damages because: (1) plaintiffs did not contest defendants' assertion that all of the Kansas claims were based on the "cause of action" asserted in Alabama, and (2) plaintiffs did not explain how their allegations related to the accrual of a new claim or cause of action in the Kansas case. *See Memorandum And Order* (Doc. # 79) at 27–31. In addition, the Court held that even if plaintiffs' allegations related to the accrual of a new cause of action, any claims based on such a cause of action would be barred in this case because plaintiffs included the allegations in their amended counterclaims in Alabama. *See id.* at 31–33.

■ In contrast to the claims which the Court previously dismissed, plaintiffs' amended RICO claims allege more than new damages under the Alabama causes of action. Furthermore, the Kansas Plaintiffs did not assert their amended RICO allegations in their amended counterclaims

in Alabama. The amended RICO claims primarily concern conduct by UILIC and Torchmark, in 2001 and after, to punish W & R for its decision to replace some UILIC policies with Nationwide policies. In particular, plaintiffs allege that because W & R replaced certain UILIC policies with Nationwide policies, defendants terminated the PUA effective April 30, 2001, initiated a NASD investigation, filed a lawsuit in California against W & R, W & R Financial and others, and took certain actions to increase the amount of damages in the Alabama litigation. Likewise, nearly all of the relief which plaintiffs request in Count I is based on conduct which occurred after the initial counterclaims in Alabama, in May of 2000, and the amended counterclaims in Alabama, in March of 2001.[13] In their Alabama counterclaims, W & R and W & R Financial did not allege any conduct by Torchmark or Richey relative to Nationwide policies, and they did not seek any damages which they now assert in their amended RICO claims.[14] Though

dants assume that the Kansas Plaintiffs seek damages based on the operative facts at issue in the Alabama action. For reasons explained below, however, the Court finds that plaintiffs' amended RICO claims are based on different facts than the Alabama counterclaims and that the RICO claims state a separate cause of action from the ones asserted in Alabama. Because the RICO claims state a separate cause of action, the relevant cut-off date for res judicata purposes is May 24, 2000—the date when W & R and W & R Financial filed their initial counterclaims in Alabama. *See Memorandum And Order* (Doc. # 79) at 29–30.

13. Plaintiffs have included numerous allegations related to events before 2001 but these allegations largely contain background facts and/or concern the RICO claim which W & R Investment also pleads in Count I. As explained in the Court's prior order, defendants have not shown as a matter of law that the claims of W & R Investment are barred by the Alabama judgments (which only applied to W & R and W & R Financial). *See Memorandum And Order* (Doc. # 79) at 33–36.

14. Plaintiffs' initial complaint in this case referred generally to efforts of Torchmark and Richey to prevent W & R's sale of "competitive variable products issued by another insurance company." Complaint (Doc. # 1) ¶ 40. In its previous order on defendant's motion for summary judgment, the Court assumed that paragraph 40 referred to products issued by United Securities Alliance, Inc. ("USA"). Based on this assumption, the Court concluded that plaintiffs' amended Alabama counterclaims—which asserted that Torchmark, Richey and others engaged in an effort to prevent W & R from distributing USA products (new products UILIC introduced to compete directly with products which W & R distributed)—could "easily encompass the assertions of paragraph 40 of the Kansas complaint." *Memorandum And Order* (Doc. # 79) at 32. The Court's conclusion may have been in error because in paragraph 40 of the Kansas complaint, plaintiffs apparently intended that "products issued by another insurance company" refer to Nationwide products, not USA products. *See Plaintiff's Memorandum In Opposition To Motion For Summary Judgment* (Doc. # 57) at 21. Plain-

the amended RICO claims here and the Alabama counterclaims are related and contain factual overlap, the claims do not arise out of the same "nucleus of operative facts." *Old Republic Ins. Co. v. Lanier,* 790 So.2d 922, 928 (Ala.2000).

The amended RICO claims allege a *continuing course of wrongful conduct.* Under RICO as well as other areas of the law, "a defendant's continuing course of conduct, even if related to conduct complained of in the earlier lawsuit, generally creates a separate cause of action." *United Food & Commercial Workers v. City Foods, Inc.,* 878 F.Supp. 122, 123 (N.D.Ill. 1995); *see Reisner v. Stoller,* 51 F.Supp.2d 430, 451 (S.D.N.Y.1999) (RICO claims which accrued after first action filed, based on injuries sustained after first action filed not barred in subsequent action by doctrine of res judicata); *see also Crowe v. Leeke,* 550 F.2d 184, 187 (res judicata has very little applicability to continuing series of acts, for generally each act gives rise to new cause of action); *Kilgoar v. Colbert County Bd. of Educ.,* 578 F.2d 1033, 1035 (5th Cir.1978) ("Subsequent conduct, even if it is of the same nature as the conduct complained of in a prior lawsuit, may give rise to an entirely separate cause of action."); Moore's Federal Practice 3d § 131.23[3][c] at 131–64.1 ("Whatever the cut-off date, a continuing series of wrongful acts resulting in ongoing damage to the plaintiff will usually permit a series of actions, with each such action considered to be a separate claim unrestricted by the limitations of the claim preclusion doctrine."). "A cause of action accrues to the plaintiff each time the defendant engages in ... conduct that harms the plaintiff." *Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.,* 669 F.2d 490, 494 (7th Cir.1982) (antitrust); *see also Bath v. Bushkin, Gaims, Gaines & Jonas,* 913 F.2d 817, 820 (10th Cir.1990) (RICO cause of action accrues when plaintiff discovers, or reasonably should have discovered, existence and source of injury and that injury is part of pattern), *overruled in part on other grounds, Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991).[15]

Because plaintiffs have alleged conduct under RICO which extended beyond the date when they filed their Alabama coun-

---

tiffs therefore may be able to state a new and independent claim against Torchmark and Richey based on their allegation in paragraph 40 of their original complaint. On or before **December 5, 2003**, plaintiffs may file a motion to amend their complaint to re-assert their allegation from the original complaint that UILIC employees telephoned and corresponded with the W & R sales force to prevent the sale of competitive variable products issued by another insurance company. To clarify the scope of any such proposed amendment, plaintiffs should specify the name of the insurance company products at issue.

**15.** Defendant argues that whether a cause of action accrues for statute of limitations purposes is a separate question from whether the cause of action "could have been brought" in the first action for res judicata purposes. Defendant does not cite any authority for this proposition. In addition, the phrase "claims that could have been brought" is defined in part as those claims in existence at the time the original complaint is filed. *See Manning,* 953 F.2d at 1359 (claims that "could have been brought" are claims in existence when original complaint is filed or claims actually asserted by supplemental pleadings). Likewise, courts have noted that whether a claim is "mature" under Rule 13(e), Fed.R.Civ.P., which permits but does not require supplemental counterclaims, is synonymous with the inquiry whether the claims have accrued for statute of limitations purposes. *See Cabrera v. Courtesy Auto, Inc.,* 192 F.Supp.2d 1012, 1015 (D.Nebr.2002). For these reasons, the Court finds that if a claim has not accrued for statute of limitations purposes at the time the original complaint is filed in the first action, it "could not have been brought" in that action under Alabama law for purposes of res judicata.

terclaims and plaintiffs did not assert a claim based on that conduct in their amended Alabama counterclaims, res judicata does not bar their amended RICO claims in this case. Accordingly, the Court overrules defendants' motion to dismiss.

**IT IS THEREFORE ORDERED** that *Defendants' Motion For Partial Dismissal Of Plaintiffs' Amended Complaint* (Doc. # 124) filed June 27, 2003 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that on or before **December 5, 2003**, plaintiffs may file a motion to amend their complaint to re-assert their allegation from paragraph 40 of the original complaint.